## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIVEPERSON, INC.,<br><br>                              Plaintiff,<br>         vs.<br><br>24/7 CUSTOMER, INC.,<br><br>                              Defendant. | Case No. 14-CV-01559-RWS<br><br><br>__ANSWER__ |

Defendant [24]7 Customer, Inc. ("[24]7" or "Defendant"), by and through its undersigned

counsel, as and for its Answer to the Second Amended Complaint, responds as follows:

1.       In answer to Paragraph 1, [24]7 admits that LivePerson offers live-interaction and

customer engagement technology for e-commerce websites.  [24]7 further admits that in general

live-interaction or "online engagement" technology enables businesses to interact in real-time

with their website visitors through instant messaging (aka "chat"), voice, and content delivery.

[24]7 further admits that LivePerson has technology that purports to analyze the activities of

website visitors and what such a website visitor needs in real-time.  Except as so admitted, [24]7

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 1, and therefore denies those allegations.

2.       In answer to Paragraph 2, [24]7 lacks knowledge or information sufficient to form

a belief as to the truth of the allegations contained in Paragraph 2, and therefore denies those

allegations.

3.       In answer to Paragraph 3, [24]7 admits that it has historically provided outsourced

human call-center operators to businesses, that certain of those businesses were in need of

auxiliary manpower to answer phones in their call centers, and that [24]7 operators would

communicate directly with consumers that contact a company's call center, *e.g.,* for customer support.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 3 and denies that the characterization contained therein is complete description of [24]7's historical or current business operations.

4.      In answer to Paragraph 4, [24]7 admits that it entered into a contractual relationship with LivePerson in 2006, and that in 2007 the parties entered into an additional contract.  [24]7 admits that it provided call-center personnel to joint customers, but denies the allegations of Paragraph 4 to the extent they suggest that call-center personnel were the only resource that [24]7 provided; for example, as reflected in the parties' Master Services Agreement, [24]7 brought predictive analysis technology to its relationship with LivePerson, and [24]7 retained its ownership of that technology.  [24]7 respectfully refers the Court to the parties' contracts for their specific terms.   Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 4.

5.      In answer to Paragraph 5, [24]7 admits that the two referenced contracts contain confidentiality clauses and that certain LivePerson business clients engaged [24]7 labor agents to provide customer service via LivePerson's live-interaction technology.  [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding LivePerson's "belief" and therefore denies that allegation.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 5.  [24]7 specifically denies that it had never used website-based live-interaction technology in its business before 2006.  [24]7 further denies that LivePerson "educated" [24]7 labor agents regarding use of live-interaction technology.  [24]7 also denies that LivePerson facilitated relationships between its business clients and [24]7 labor agents.  [24]7 denies the allegation that the parties' contracts contain "non-competition clauses" to the

extent it is intended to suggest that [24]7 did not have the right to develop, license, and/or sell technology performing the same or similar services as contemplated by the parties' agreements. [24]7 respectfully refers the Court to the parties' contracts for their terms and provisions.

6.      In answer to Paragraph 6, [24]7 admits that since 2006, [24]7 has provided call-center agents to certain clients of LivePerson, some of which may have originated from introductions made by LivePerson through one of the parties' contractual relationships, and also in circumstances where a customer engaged LivePerson to provide live-interactive technology, and separately engaged [24]7 to provide outsourced customer service agents.  [24]7 denies that all LivePerson technology to which LivePerson refers in Paragraph 6 is copyrighted, proprietary, or confidential and denies any improper access to LivePerson's technology.  Except as so admitted, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore denies same on that ground.

7.      In answer to Paragraph 7, [24]7 denies each and every allegation set forth therein, and specifically denies any abuse of access to LivePerson's technology or information, or any interference with LivePerson's technology or relationships.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

8.      In answer to Paragraph 8, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of companies that have offered live-engagement technology to global, enterprise-grade clients during an unspecified time period, and therefore denies same on that ground.  [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding LivePerson's ability to deliver functionality to clients or the basis for any such ability, and therefore denies same on that

ground.  [24]7 denies each and every remaining allegation set forth in Paragraph 8, and specifically denies that it relied on any LivePerson proprietary technology or trade secrets in developing any [24]7 technology; denies any wrongful actions, improper or abuse of access, disruption of LivePerson's operations, misrepresentation of data regarding LivePerson's technology, services, or system performance, or use of spyware by [24]7; and denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

9.       In answer to Paragraph 9, [24]7 denies each and every allegation set forth therein, and specifically denies any misuse of LivePerson's information or misrepresentation of LivePerson's data.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

10.       In answer to Paragraph 10, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

### I.    PARTIES, JURISDICTION, AND VENUE

11.       In answer to Paragraph 11, [24]7 admits that LivePerson is a Delaware corporation with an office on Seventh Avenue, New York, NY, but states that the address listed for LivePerson in the 2006 Co-Marketing Agreement is the following: 462 Seventh Ave, 3rd Floor, New York, NY 10018.

12.       In answer to Paragraph 12, [24]7 admits that it is a California corporation with its principal place of business at 910 E.  Hamilton Avenue, Suite 240, Campbell, California.

13.       In answer to Paragraph 13, [24]7 admits that this Court has subject matter jurisdiction over this action and admits that LivePerson purports to state claims under the Copyright Act, 17 U.S.C. § 101 *et seq*., and the Lanham Act, 15 U.S.C. § 1051, *et seq*.  [24]7

admits that LivePerson's unfair-competition based claims purport to invoke subject-matter jurisdiction under 28 U.S.C. § 1338.  [24]7 further admits that LivePerson's state law claims purport to invoke this Court's supplemental subject matter jurisdiction under 28 U.S.C. § 1367. Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 13, denies that LivePerson has suffered any damage or loss, and denies that LivePerson is entitled to any relief against [24]7, whether under the cited statutes or otherwise.

14.     In answer to Paragraph 14, [24]7 denies for lack of knowledge or information the allegations therein, but admits and alleges that LivePerson purports to have invoked this Court's subject matter jurisdiction under the statute cited.

15.     In answer to Paragraph 15, [24]7 admits that this Court has personal jurisdiction over [24]7 because [24]7 conducts business in New York.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 15.

16.     In answer to Paragraph 16, [24]7 admits that this Court has personal jurisdiction over [24]7 because [24]7 conducts business in New York.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 16.

## II.   GENERAL ALLEGATIONS

17.     In answer to Paragraph 17, [24]7 admits that at certain times LivePerson has offered technology that purports to assess the needs of website visitors, but [24]7 denies the allegations of Paragraph 17 to the extent they imply that LivePerson technology has been capable of predictive analytics at all times since 1996.  [24]7 further admits that in general, assistance to website visitors can be delivered with live help via instant messaging (aka "live chat" or "chat"), and/or voice connections, and through targeted content delivery (*e.g.*, instructions, FAQs, video, discount coupons).  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 17.

18.     In answer to Paragraph 18, [24]7 admits that at certain times, LivePerson has offered technology that attempts to assess the needs of website visitors.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 18.

19.     In answer to Paragraph 19, [24]7 admits that LivePerson purports to analyze website visitor behavior to apply rules in an attempt to predict visitors' needs.  Except as so admitted, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and therefore denies same on that ground.

20.     In answer to Paragraph 20, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and therefore denies same on that ground.

21.     In answer to Paragraph 21, [24]7 admits that LivePerson technology purports to prioritize the utilization of call center agents' time.  Except as so admitted, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies same on that ground.

22.     In answer to Paragraph 22, [24]7 denies that LivePerson is an "industry leader" and further denies that enterprise-grade clients' needs cannot be met by competing technologies. [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22, and therefore denies same on that ground.

23.     In answer to Paragraph 23, [24]7 admits that certain companies engage labor outsourcing vendors, some of whom maintain call centers in various lower-cost locations around the world to supply customer service and sales agents.  [24]7 admits that certain call-center personnel are authorized to access to LivePerson's technology to provide call-center services. Except as so admitted, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies same on that ground.

24.     In answer to Paragraph 24, [24]7 admits that [24]7 was founded in 2000, admits that at the time of its founding [24]7 was primarily engaged in providing outsourced call-center services, and admits that [24]7 supplies outsourced call-center personnel through contact centers located, for example, in India, the Philippines, and Guatemala.  [24]7 further admits that it has provided call-center personnel to business clients for years.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 24, and specifically denies that it is a late entrant into the live-interaction technology space; to the contrary, [24]7 has provided predictive analytics as part of its business services for many years.

25.     In answer to Paragraph 25, [24]7 admits that the parties entered into a Co-Marketing and Referral Agreement in 2006, admits that the agreement provided for co-marketing of certain LivePerson technology and certain [24]7 services, and respectfully refers the Court to the contract for its terms and conditions.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 25.

26.     In answer to Paragraph 26, [24]7 admits that the parties entered into a Co-Marketing and Referral Agreement in 2006, admits that the Co-Marketing Agreement contained confidentiality provisions that applied to both parties, and respectfully refers the Court to the contract for its terms and conditions.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 26.

27.     In answer to Paragraph 27, [24]7 admits that the parties entered into a second contract in early 2007, admits that it was entitled Master Service Agreement, admits that the MSA provided terms and conditions under which the parties could provide a combination of products and services to customers, and respectfully refers the Court to the contract for its terms

and conditions.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 27.

28.     In answer to Paragraph 28, [24]7 admits that the MSA conveyed a limited, non-transferable, revocable, royalty-free right for [24]7 to access and use certain LivePerson technology for the purposes of performing certain services, admits that the MSA incorporated the confidentiality obligations of the Co-Marketing Agreement, and respectfully refers the Court to the contract for its terms and conditions.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 28.

29.     In answer to Paragraph 29, [24]7 admits that the MSA and Co-Marketing Agreement provided [24]7 access to certain information LivePerson deemed information for the purposes of performing certain services, admits that the Co-Marketing Agreement prohibited the reverse-engineering of LivePerson's "Intellectual Property" as defined therein, and respectfully refers the Court to the contracts for the terms and conditions of the contracts.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 29.

30.     In answer to Paragraph 30, [24]7 admits that the parties provided a combined solution to several clients.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 30.

31.     In answer to Paragraph 31, [24]7 admits that the parties marketed their services separately and each had pre-existing relationships with clients.  [24]7 also admits that the scenarios described by LivePerson were possibilities under the contracts (*i.e.*, a LivePerson client might use 24/7 for call-center operators under either a co- marketed arrangement, or under separate arrangements with each of LivePerson and 24/7, or a LivePerson client might use its own employee call-center personnel or another call-center outsourcer entirely), but [24]7 denies

that the list set forth in Paragraph 31 is an exhaustive list of possible arrangements. Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 31

32.     In answer to Paragraph 32, [24]7 admits that it in some instances with some customers, [24]7 had non-public access to certain limited aspects of LivePerson's technology used by agents or administrators, such as display interfaces. [24]7 denies that it had access to the technology underlying the display interfaces such as the source code. [24]7 admits that it has worked with LivePerson and with their joint customers to develop and implement behavioral rules related to how the technology on that joint customer's website "interprets and responds to various behaviors exhibited by visitors to the client's website," but denies that it had "control" over such functions. Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 32, and specifically denies that it had "on-demand" access to a "wealth of business and technical data."

33.     In answer to Paragraph 33, [24]7 admits that in certain instances [24]7 has access and permission to use certain LivePerson technology and information pursuant to the terms of LivePerson's license agreements with joint customers. [24]7 denies that it is only afforded access to LivePerson technology and information as a call-center labor provider. Except as so admitted or denied, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies same on that ground.

34.     In answer to Paragraph 34, [24]7 admits that it has had some access to certain non-public aspects of LivePerson's technology, and admits that some of that access was subject to contractual restrictions. Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 34.

35.     In answer to Paragraph 35, [24]7 admits that it has developed its own competing technology, and that it competes with LivePerson in some markets and with regard to some products.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 35, and specifically denies misappropriation of any allegedly proprietary information.  [24]7 took nothing from LivePerson, and [24]7 spent many years and millions of dollars to develop its own technology.

36.     In answer to Paragraph 36, [24]7 admits that it had some access to certain non-public aspects of LivePerson's technology, including though the Co-Marketing Agreement and the MSA.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 36.

37.     In answer to Paragraph 37, [24]7 admits that it had some access to certain aspects of LivePerson's technology by virtue of its relationships with certain joint customers.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 37, and specifically denies any abuse of access.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

38.     In answer to Paragraph 38, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

39.     In answer to Paragraph 39, [24]7 denies each and every allegation set forth therein.  [24]7 further denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

40.     In answer to Paragraph 40, [24]7 admits that it is able to install its technology on websites where LivePerson's technology was already installed.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 40, and specifically denies any use of alleged "spyware."  [24]7 further denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

41.     In answer to Paragraph 41, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

42.     In answer to Paragraph 42, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.  [24]7 lacks knowledge or information sufficient to form a belief as to what LivePerson allegedly believes, and therefore denies same on that ground.

43.     In answer to Paragraph 43, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in the alleged copying, unauthorized use, "spying," reverse engineering, or misappropriation, that it has engaged in any wrongful conduct toward LivePerson, or that it has injured LivePerson in the manner alleged, in any manner, or at all.  [24]7 lacks knowledge or information sufficient to form a belief as to what LivePerson allegedly believes, and therefore denies same on that ground.

44.     In answer to Paragraph 44, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

45.     In answer to Paragraph 45, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

46.     In answer to Paragraph 46, [24]7 denies each and every allegation set forth therein.

47.     In answer to Paragraph 47, [24]7 admits that it has advertised itself as creating the first predictive or smart chat program.  Except as so admitted, [24]7 denies each and every allegation set forth therein.

48.     In answer to Paragraph 48, [24]7 admits that the post attached as Exhibit C to the Second Amended Complaint appeared on [24]7's website; that the post is entitled, "Introducing [24]7 Assist - Finally, a Smart Chat that Drives Sales and Satisfaction Outcomes"; that the post states it is authored by PV Kannan; that the post is dated January 22, 2013; that the post states that [24]7 Assist is "the industry's first smart chat that uses prediction and real-time decisioning with big data to drive customer experience"; that the post states "Back in the early 90s, I was one of the first to invent chat for customer service and sales operations"; that the post refers to "antiquated chat platforms"; and that the post states, "We've come a long ways since the 90s." [24]7 respectfully refers the Court to Exhibit C for the specific contents and certain context of the post.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 48.

49.     In answer to Paragraph 49, [24]7 admits that a white paper the same or substantially similar to that attached as Exhibit D to the Second Amended Complaint appeared on [24]7's website; that the white paper contains a section entitled "Executive Summary" that refers to "traditional chat software solutions" and states that the "need for a more intuitive, predictive real-time customer service chat solution has now reached a critical point for today's

enterprises"; that the white paper describes [24]7 Assist as "the first predictive, real-time customer assistance solution for chat" and states that "[24]7 Assist, the industry's first smart chat platform, empowers agents with predictive models, intelligence, and rich content." [24]7 respectfully refers the Court to Exhibit D for the specific contents and certain context of the white paper. Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 49.

50.      In answer to Paragraph 50, [24]7 denies each and every allegation set forth therein. [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

51.      In answer to Paragraph 51, [24]7 admits that the parties entered into the Co-Marketing Agreement and MSA, admits that the MSA and Co-Marketing Agreement provided [24]7 access to certain information for the purposes of performing certain services, admits that the Co-Marketing agreement prohibited the reverse-engineering of LivePerson's "Intellectual Property" as defined therein, and respectfully refers the Court to the contracts for their terms and conditions. Except as so admitted, [24]7 denies each and every allegation set forth therein. [24]7 specifically denies that it accessed LivePerson's technology to create competing technology or that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

52.      In answer to Paragraph 52, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the terms of LivePerson's agreements with their clients, and therefore denies same on that ground. [24]7 denies each and every remaining allegation set forth in Paragraph 52. [24]7 specifically denies that it has engaged in

any wrongful conduct toward LivePerson or that it has exceeded its lawful access to LivePerson's technology.

53.     In answer to Paragraph 53, [24]7 denies that it has spied on, reverse engineered, copied, manipulated, sabotaged, or made unauthorized use of LivePerson's technology, that it misappropriated any LivePerson technology, that it interfered with or "stole" any client relationships, or that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.  [24]7 denies any remaining allegations in Paragraph 53.

54.     In answer to Paragraph 54, [24]7 denies that LivePerson has lost or been notified by cancellation by major clients due to improper conduct by [24]7.  [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what LivePerson's clients have told LivePerson, and therefore denies same on that ground.  [24]7 denies that it has engaged in any wrongful conduct toward LivePerson, or that it has "actively disparag[ed]" LivePerson's technology or services, or that it has injured LivePerson in the manner alleged, in any manner, or at all. [24]7 denies any remaining allegations in Paragraph 54.

55.     In answer to Paragraph 55, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

## COUNT I

## Copyright Infringement, 17 U.S.C. § 101 *et seq*.

56.     In answer to Paragraph 56, [24]7 incorporates herein its admissions, statements, and denials set forth in response to the allegations of paragraphs 1-55, inclusive.

57.     In answer to Paragraph 57, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies same on that ground.

58.     In answer to Paragraph 58, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has infringed upon any of LivePerson's intellectual property rights.

59.     In answer to Paragraph 59, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has infringed upon any of LivePerson's intellectual property rights.

60.     In answer to Paragraph 60, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has infringed upon any of LivePerson's intellectual property rights.

61.     In answer to Paragraph 61, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

<u>**COUNT II**</u>

<u>**Misappropriation of Trade Secrets**</u>

62.     In answer to Paragraph 62, [24]7 incorporates herein its admissions, statements, and denials set forth in response to the allegations of paragraphs 1-61, inclusive.

63.     In answer to Paragraph 63, [24]7 denies each and every allegation set forth therein, and specifically denies the existence of any trade secret possessed by LivePerson.

64.     In answer to Paragraph 64, [24]7 denies each and every allegation set forth therein, and specifically denies the existence of any trade secret possessed by LivePerson.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

65.     In answer to Paragraph 65, [24]7 denies each and every allegation set forth therein, and specifically denies the existence of any trade secret possessed by LivePerson.  [24]7

specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

66.    In answer to Paragraph 66, [24]7 denies each and every allegation set forth therein, and specifically denies the existence of any trade secret possessed by LivePerson.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

67.    In answer to Paragraph 67, [24]7 denies each and every allegation set forth therein, and specifically denies the existence of any trade secret possessed by LivePerson.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

## COUNT III

### Breach of Contract

68.    In answer to Paragraph 68, [24]7 incorporates herein its admissions, statements, and denials set forth in response to the allegations of paragraphs 1-68, inclusive.

69.    In answer to Paragraph 69, [24]7 admits that the parties entered into the Co-Marketing Agreement and MSA, but notes that [24]7 gave notice of termination of the Co-Marketing Agreement effective November 2, 2007, and respectfully refers the Court to the contracts for their specific terms and conditions.  Except as so admitted, [24]7 denies each and every allegation set forth in Paragraph 69.

70.    In answer to Paragraph 70, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

71.     In answer to Paragraph 71, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

72.     In answer to Paragraph 72, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies same on that ground.

73.     In answer to Paragraph 73, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

**COUNT IV**

**Intentional Interference With Advantageous
Existing Economic Relationships**

74.     In answer to Paragraph 74, [24]7 incorporates herein its admissions, statements, and denials set forth in response to the allegations of paragraphs 1-73, inclusive.

75.     In answer to Paragraph 75, [24]7 admits that in 2006 LivePerson claimed to have relationships with certain customers specifically identified in the Co-Marketing Agreement. [24]7 further admits that it learned of certain LivePerson customer relationships through providing services to mutual customers. Other than as specifically admitted, [24]7  lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75, and therefore denies same on that ground.

76.     In answer to Paragraph 76, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

77.     In answer to Paragraph 77, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

78.     In answer to Paragraph 78, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

79.     In answer to Paragraph 79, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

80.     In answer to Paragraph 80, [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson, that [24]7 has wrongfully interfered with any LivePerson customer relationship, that [24]'s technology is "misappropriated," or that [24]7 has injured LivePerson in the manner alleged, in any manner, or at all.  As to the remaining allegations of Paragraph 80, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80,, and therefore denies same on that ground.

81.     In answer to Paragraph 81, [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

## COUNT V

### Intentional Interference with Prospective
### Advantageous Economic Relationships

82.     In answer to Paragraph 82, [24]7 incorporates herein its admissions, statements, and denials set forth in response to the allegations of paragraphs 1-82, inclusive.

83.     In answer to Paragraph 83, [24]7 lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies same on that ground.

84.     In answer to Paragraph 84, [24]7 admits that in 2006 LivePerson claimed to have relationships with certain customers specifically identified in the Co-Marketing Agreement. [24]7 further admits that it learned of certain LivePerson customer relationships through providing services to mutual customers.  As to the remaining allegations in Paragraph 84, [24]7 denies each and every such allegation.

85.     In answer to Paragraph 85, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

86.     In answer to Paragraph 86, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

87.     In answer to Paragraph 87, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

88.     In answer to Paragraph 88, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

89.     In answer to Paragraph 89, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

## COUNT VI

### Lanham Act Unfair Competition, 28 U.S.C. § 1125(a)

90.      In answer to Paragraph 90, [24]7 incorporates herein its admissions, statements, and denials set forth in response to the allegations of paragraphs 1-89, inclusive.

91.      In answer to Paragraph 91, [24]7 denies each and every allegation set forth therein.

92.      In answer to Paragraph 92, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

93.      In answer to Paragraph 93, [24]7 denies each and every allegation set forth therein.

94.      In answer to Paragraph 94, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

## COUNT VII

### Common Law Unfair Competition

95.      In answer to Paragraph 95, [24]7 incorporates herein its admissions, statements, and denials set forth in response to the allegations of paragraphs 1-94, inclusive.

96.      In answer to Paragraph 96, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

97.      In answer to Paragraph 97, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

98.     In answer to Paragraph 98, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all.

## COUNT VIII

## Unjust Enrichment

99.     In answer to Paragraph 99, [24]7 incorporates herein its admissions, statements, and denials set forth in response to the allegations of paragraphs 1-98, inclusive.

100.     In answer to Paragraph 100, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all

101.     In answer to Paragraph 101, [24]7 denies each and every allegation set forth therein.  [24]7 specifically denies that it has engaged in any wrongful conduct toward LivePerson or that it has injured LivePerson in the manner alleged, in any manner, or at all

## ANSWER AS TO PRAYER FOR RELIEF

Defendants deny that plaintiff is entitled to any relief, whether legal, equitable, or otherwise, under any theory that is asserted or that could be asserted in the Second Amended Complaint.

## AFFIRMATIVE DEFENSES

As for its separate and affirmative defenses to all causes of action set forth against it in the Second Amended Complaint, [24]7 alleges as follows:

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Second Amended Complaint, and each and every purported claim for relief, therein,

fails to state any claim for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Statute of Limitations)

LivePerson's claims are barred, in whole or in part, by the applicable statutes of limitations.

## THIRD AFFIRMATIVE DEFENSE
### (Laches)

LivePerson's claims are barred, in whole or in part, by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver and/or Estoppel)

LivePerson's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

## FIFTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

LivePerson's claims are barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE
### (Bad Faith)

LivePerson's claims are barred, in whole or in part, by LivePerson's bad faith.

## SEVENTH AFFIRMATIVE DEFENSE
### (Assumption of Risk)

LivePerson's claims are barred, in whole or in part, due to LivePerson's express or implicit assumption of risk.

## EIGHTH AFFIRMATIVE DEFENSE
### (Authorization/License)

LivePerson's claims are barred, in whole or in part, because [24]7's acts, including but not limited to access and use, were expressly or impliedly authorized and/or licensed, either directly or through the rights of third parties.

## NINTH AFFIRMATIVE DEFENSE
### (Ratification)

LivePerson's claims are barred, in whole or in part, because LivePerson, through its conduct, approved, authorized, consented to, and/or ratified the conduct alleged, if it occurred.

## TENTH AFFIRMATIVE DEFENSE
### (Independent Creation)

LivePerson's copyright claims are barred, in whole or in part, because any allegedly infringing material resulted from independent creation.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Abandonment)

LivePerson's copyright claims are barred, in whole or in part, because LivePerson abandoned any copyright in any allegedly infringing material.

## TWELFTH AFFIRMATIVE DEFENSE
### (Fair Use)

LivePerson's copyright claims are barred, in whole or in part, by the doctrine of fair use.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Merger)

LivePerson's copyright claims are barred, in whole or in part, by the doctrine of merger.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Copyright Misuse)

LivePerson's copyright claims are barred, in whole or in part, by the doctrine of copyright misuse, as LivePerson's copyright claims seek to secure exclusive rights beyond the scope of LivePerson's copyrights.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Preemption)

LivePerson's state law claims are barred, in whole or in part, by the doctrine of preemption.

### SIXTEENTH AFFIRMATIVE DEFENSE
**(Ascertainability of Alleged Trade Secrets)**

LivePerson's trade secret misappropriation claim is barred, in whole or in part, because LivePerson's alleged trade secrets were known by or were readily ascertainable by proper means and hence not protectable.

### SEVENTEENTH AFFIRMATIVE DEFENSE
**(Any Interference Privileged or Justified)**

LivePerson's claims are barred, in whole or in part, in that the actions by which [24]7 allegedly interfered were privileged and/or justified.

### EIGHTEENTH AFFIRMATIVE DEFENSE
**(Voluntary Conveyance)**

LivePerson's claims are barred, in whole or in part, because LivePerson voluntarily provided [24]7 any alleged proprietary information and technology at issue.

### NINETEENTH AFFIRMATIVE DEFENSE
**(No Injunctive Relief)**

LivePerson is not entitled to injunctive relief because any alleged injury to LivePerson is not immediate or irreparable, and LivePerson has an adequate remedy at law.

### TWENTIETH AFFIRMATIVE DEFENSE
**(No Injury or Damage)**

LivePerson's claims are barred, in whole or in part, because LivePerson has not been injured or damaged as a proximate result of any act or omission for which [24]7 is responsible.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
**(Speculative, Uncertain, and Unforeseeable Damages)**

LivePerson's claims are barred, in whole or in part, because any alleged damages are speculative, uncertain, and not foreseeable to [24]7.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

LivePerson's claims are barred, in whole or in part, by LivePerson's failure to mitigate its damages, if any damages exist.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Detriment)

LivePerson's claims are barred, in whole or in part, because LivePerson has suffered no detriment from the alleged acts and omissions about which LivePerson now complains.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Lack of Causation; Fault of Others)

If and to the extent LivePerson has suffered any compensable injury or damage as a proximate result of [24]7's conduct, all of which is specifically denied, all such injury and damage was the proximate result, in whole or in part, of the negligence, fault, and want of due care of LivePerson or others.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Good Faith)

At all times material hereto, all of [24]7's actions were undertaken in good faith and without fraud, oppression or malice against LivePerson or its rights, thereby precluding any and all claims for punitive or exemplary damages.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Lack of Particularity; Reservation of Rights)

The Complaint does not describe the claims or events with sufficient particularity to permit [24]7 to ascertain what other defenses may exist.  [24]7 therefore reserves the right to assert all defenses that may pertain to the Complaint once the precise nature of such claims is ascertained.

WHEREFORE, having fully answered LivePerson's allegations, [24]7 respectfully prays that all claims against [24]7 be dismissed with prejudice, that [24]7 receives its attorney's fees and costs from plaintiff, and that [24]7 be granted such other and further relief as this Court may deem proper.

Dated: February 18, 2015

   */s/ Mark E. Miller*
Mark E. Miller (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:   (415) 984-8700
Facsimile:   (415) 984-8701
Email:  markmiller@omm.com

GEORGE A. RILEY (*pro hac vice*)
griley@omm.com
DAVID R. EBERHART (*pro hac vice*)
deberhart@omm.com
SUSAN ROEDER (*pro hac vice*)
sroeder@omm.com
ELYSA Q. WAN (*pro hac vice*)
ewan@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:   (415) 984-8700
Facsimile:   (415) 984-8701

CAROLYN WALL
O'MELVENY & MYERS LLP
cwall@omm.com
7 Times Square
New York, NY 10036
Telephone:   (212) 326-2000
Facsimile:   (212) 326-2061

*Attorneys for Defendant 24/7 Customer, Inc.*