UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIVEPERSON, INC.,<br><br>                    Plaintiff,<br>vs.<br><br>24/7 CUSTOMER, INC.,<br><br>                    Defendant. | No. 14-CV-01559-RWS |

**MEMORANDUM OF LAW IN SUPPORT OF LIVEPERSON'S MOTION
TO COMPEL PRODUCTION FROM RELEVANT CUSTODIANS AND
FOR IDENTIFICATION OF WITNESSES**

**Table of Contents**

I.   INTRODUCTION .................................................................................................. 3

II.  BACKGROUND .................................................................................................... 4

    A. Rather Than Collect And Produce Documents From Custodians Likely
       To Have Discoverable Information, [24]7 Is Dumping Hundreds
       Of Thousands Of Patently Irrelevant Documents On LivePerson ............... 4

    B. [24]7 Is Withholding Basic Identifying Information About
       Relevant Personnel .................................................................................... 5

III. ARGUMENT ......................................................................................................... 9

    A. [24]7 Should be Compelled Promptly To Produce Documents
       From Custodians Who Are Likely To Have Responsive Documents,
       And Ordered To Stop Dumping Junk Documents On LivePerson ............. 9

    B. [24]7 Should be Compelled to Disclose Basic Identifying
       Information About Relevant Personnel ..................................................... 12

IV.  CONCLUSION ..................................................................................................... 14

## I.     INTRODUCTION

Discovery in federal court is supposed to be an orderly process by which the parties, according to straightforward rules and common sense, provide the documents and information needed to resolve the matter. Discovery in this case, however, has devolved into an item-by-item struggle as Defendant [24]7 Customer, Inc. ("**[24]7**") does everything it possibly can to prevent Plaintiff LivePerson, Inc. ("LivePerson") from getting even basic facts before the clock runs out. This is now the third time LivePerson has had to seek the Court's assistance in obtaining information that [24]7 should have provided long ago: documents from indisputably relevant custodians, and the present employment status and last known location of [24]7 employees who are potential witnesses.

As the Court knows, this is a complex, technical case involving [24]7's campaign to steal LivePerson's protected intellectual property and target LivePerson's clients through a variety of underhanded means. From the outset, [24]7 has obstructed discovery and, as a result, it has so far managed to avoid producing documents from almost all of its relevant custodians—instead dumping several hundred thousand plainly irrelevant documents on LivePerson in an egregious display of discovery abuse—and has even managed to conceal the present employment status and location of virtually all of its possible witnesses, thereby making it extremely difficult for LivePerson to prioritize witnesses and commence depositions.

This motion seeks only the most mundane relief: [24]7 should be ordered promptly to collect and produce documents from 12 custodians who indisputably have discoverable information. And [24]7 should be ordered promptly to provide the employment status and last

known location—information that should be retrievable from [24]7's human resources database in a matter of minutes—of the potential witnesses LivePerson has identified.

## II. BACKGROUND

### A. Rather Than Collect And Produce Documents From Custodians Likely To Have Discoverable Information, [24]7 Is Dumping Hundreds Of Thousands Of Patently Irrelevant Documents On LivePerson

On January 29, 2016, [24]7 made its first production of documents, which contained only 12,614 documents from seven individual custodians.[1] None of these custodians are among the four likely witnesses whom [24]7 identified in its initial disclosures. Two of them are of marginal significance. Three more have so little connection to the case that [24]7 omitted them from its supplemental interrogatory responses. Finally, these seven custodians are all sales-related personnel; [24]7 has not produced any documents from its marketing, technical, or executive personnel.

Since then, [24]7 has made two more rounds of production, totaling about 400,000 documents. These consist of nothing but irrelevant, non-responsive, and unasked-for junk documents such as wedding announcements, sales performance reviews of individual web-chat agents, theme park reviews, and presentations on Canadian landmarks. All of them come from generic file servers, not individual custodians. And all of them are marked "Highly Confidential – Attorney's Eyes Only." It is obvious that [24]7 made no effort to review and produce only responsive documents, but instead is trying to inflict massive costs and delay as LivePerson spends thousands of dollars per day wading through this muck to ensure that [24]7 has not buried a gem within it.

---

[1] In contrast, LivePerson—the plaintiff in a case about *[24]7's illicit conduct*—collected and has diligently been producing documents from *28* different custodians.

By working its way through [24]7's first and apparently only legitimate production, however, and reviewing [24]7's deficient interrogatory responses, LivePerson has identified numerous custodians who clearly should have been part of [24]7's collection and production. Disturbingly, [24]7 has concealed some of the most obvious of these witnesses by failing to name them in either its initial disclosures or its interrogatory responses. (*See, e.g.*, Doc. #107 and Exhibits 2-5, filed under seal (quoting undisclosed and uncollected custodians Ravi Vijayaraghavan and Mike Hughes)).

In an effort to address the deficient collection and production, LivePerson asked [24]7 to explain its failure to produce documents for 12 of the custodians whose omission was most egregious. (Ex. 1, Lamb March 31, 2016 Email.) [24]7 refused:

> [24]7 is not required to identify the custodians from which it is collecting documents. [24]7 responded to LivePerson's requests for production, indicating what categories of requested documents it is searching for and producing. We are not required to provide further information regarding our ongoing collection efforts.

(Ex. 2, Parker April 5, 2016 Letter.)

Thus, to date, [24]7 has managed to avoid producing documents for the majority of the custodians who are likely to have discoverable information, and is hiding the ball as to whether it ever will do so—or if its compliance will only occur at the last possible moment, in order to impede LivePerson from developing its case and taking meaningful depositions.

### B. [24]7 Is Withholding Basic Identifying Information About Relevant Personnel

[24]7 also continues to withhold information about the current employment status and location of its relevant current and former employees, in an effort to impede LivePerson's discovery efforts and slow discovery to a crawl. [24]7's obstruction began with its failure to make a good-faith identification of knowledgeable persons in its initial disclosures, providing

only *four names* in this complex and highly technical dispute (compared to the 45 individuals identified in LivePerson's initial disclosures). (Ex. 3, [24]7's Initial Disclosures.) [24]7 cannot seriously intend to try this case on just four witnesses; those disclosures were plainly calculated to conceal discoverable witnesses until the last possible moment, at which [24]7 undoubtedly intends to "supplement" its disclosures with a multitude of newly identified personnel.

In the face of [24]7's transparent and continuing gamesmanship, LivePerson was forced to use interrogatories to begin excavating information that [24]7 should have provided under Rule 26(a)(1)(A) "without awaiting a discovery request." In its interrogatories, LivePerson expressly asked [24]7 to provide the "present or last known address" and "present or last known place of employment" for the persons it identified. [24]7's answers were non-responsive. After months of delay, during which LivePerson tried to avoid the need to burden the Court with discovery disputes, [24]7 supplemented that non-response but still failed to fairly answer the questions. Moreover, as to the people it actually has named, [24]7 answered neither the address nor employment portions of the interrogatories.[2] This Court then granted LivePerson's motion to compel and ordered [24]7 to respond—which it still has not done, after nearly three more weeks.

The location and employment status of witnesses is of particular importance in this case, given its international dimension. Many potential [24]7 witnesses are believed to be in India, and others still in the United Kingdom and Australia. Securing attendance of such witnesses— even voluntary, current employee witnesses, in the case of India—is expected to take six to nine months from the date of the request. [24]7 also has hedged that it cannot commit to produce any particular witness in the United States (or anywhere else), in part because the witness might be a

---

[2] For a few people in the supplemental response, [24]7 did state "former." This is still evasive, however, given that [24]7 probably knows the subsequent employer for at least some of these people, and certainly has their present or last known addresses.

former employee, until it knows specifically whom LivePerson intended to depose. (Ex. 4, Parker March 29, 2016 Letter.)

LivePerson recognizes that [24]7 cannot force former employees to travel internationally—or, for that matter, domestically—for deposition; but that just brings the issue of employment status and location to a head. Scheduling depositions in this case should not be allowed to proceed like a game of Battleship, in which LivePerson is forced blindly to ask [24]7 one by one to produce witnesses, and then wait until [24]7 responds with a "hit" or a "miss." Not only would such a process result in inordinate delay in scheduling depositions, but it also prevents LivePerson from selecting and grouping geographically proximate witnesses to minimize crisscrossing the globe.

This is not an abstract concern. Nearly a week after LivePerson requested its first three depositions, counsel for [24]7 responded that, "None of the persons that you have identified are [24]7 employees. We are in the process of contacting these former employees to explore scheduling. LivePerson will need to secure attendance of these former employees at a deposition either by subpoena or under the Hague Convention." (Ex. 5, Miller April 4, 2016 Email.) Another week has now gone by with no further progress on this issue, and [24]7's intransigence has left LivePerson's hands tied with respect to the two of these witnesses who are located overseas and cannot easily be located via domestic databases such as Lexis-Nexis.

LivePerson does not yet know whom it will actually need to depose. [24]7's deficient document production and interrogatory responses have made that determination impossible. But what LivePerson could do at this point—and did—is narrow the hundreds of undifferentiated names [24]7 gave in its original interrogatory response—supplemented by some obviously significant witnesses [24]7 failed to identify, but who have been revealed in the documents [24]7

has produced to date—to a list of about 60 "possibles." (Ex. 6, Lamb March 30, 2016 Email.) So that there can be absolutely no doubt, LivePerson has no intention whatsoever of trying to take 60 depositions, or even half that number.

LivePerson's list will further narrow as LivePerson learns where these people are, and whether their attendance can be compelled by notice or will require an extended process under the Hague Convention. To provide a concrete example, [24]7 provided the names—only—of 11 individuals who "may possess knowledge regarding the development efforts that led to [24]7's smart chat products and services." (Ex. 7, [24]7's Responses to LivePerson's Interrogatories, No. 1.) All of them appear, based on their names, to be of Indian nationality; but that in no way means they reside or are employed in India. Without their roles, location, or current employment status, all of which was part of the original request *last April*, LivePerson has absolutely no reasonable way to evaluate which of these people should or even could be deposed. And so all 11 are on LivePerson's current list of "possibles."

LivePerson provided its narrowed list of potential witnesses to [24]7 more than two weeks ago, and asked [24]7 once again to provide the information it should have given last year. In response, [24]7 offered only to provide an "indication" of whether each person is a current [24]7 employee, and, if so, where they are located." (Ex. 8, Miller March 31, 2016 Email). Whatever form that "indication" might take, [24]7's own words make clear that location information will be provided only for current employees. This completely ignores LivePerson's pressing need to know where in the world former employees may be located, since these will be the most likely to require extraordinary efforts to depose. When LivePerson pushed back, [24]7 absurdly asserted that it need not provide additional information that is not requested in

interrogatories, notwithstanding that LivePerson already served interrogatories seeking that information. (Ex. 2.)

### III. ARGUMENT

Where, as here, a responding party fails to make the disclosures required under Rule 26(a), or to answer an interrogatory, or to produce requested documents, "Rule 37(a) permits a party . . . [to] move for an order compelling disclosure or discovery.'" *Schomburg v. Bologna*, 2014 WL 4495192, at *1 (S.D.N.Y. Sept. 12, 2014) (Sweet, J.) (quoting FED R. CIV. P. 37(a)(1)).

#### A. [24]7 Should be Compelled Promptly To Produce Documents From Custodians Who Are Likely To Have Responsive Documents, And Ordered To Stop Dumping Junk Documents On LivePerson

It is axiomatic that [24]7 must conduct a good faith search for relevant and responsive documents and produce those documents to LivePerson. *See, e.g.*, *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) ("A party that has been served with a request for [documents] is charged with 'find[ing] and diclos[ing] all responsive documents or properly set[ting] forth why the documents are being withheld.'") (quoting *Merk Eprova AG v. Gnosis S.P.A.*, 2010 WL 1631519, at *4 (S.D.N.Y. Apr. 20, 2010)); *Legault v. Zambarano*, 105 F.3d 24, 28 (1st Cir. 1997) (holding that attorneys "must make 'a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand'") (quoting FED. R. CIV. P. 26 advisory committee's note).

At the heart of that obligation is the identification and production of documents from the most relevant sources and custodians. *See Nycomed*, 2010 WL 3173785, at *3 ("Th[e] obligation to conduct a diligent search requires good faith on the part of the responding party and its attorneys, and mandates that they work together to 'ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to

locate, review and produce responsive documents.'") (quoting *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009)). "[T]he selection of custodians is more than a mathematical count. The selection of custodians must be designed to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant period." *Kleen Prods LLC v. Packaging Corp of Am.*, 2012 WL 4498465, at *15 (N.D. Ill. Sept. 28, 2012.)

Despite LivePerson's repeated requests, [24]7 has absolutely disregarded this obligation. [24]7 refuses to disclose the custodians from whom it has collected documents, much less confer about the reasonableness of its unilateral selections. And, so far as its productions show, it has actually collected documents from only a handful of people within one particular subcategory of potential custodians: [24]7's salespeople. Of these seven people, two are of dubious relevance and the other three do not even rate highly enough to make [24]7's interrogatory responses.[3] [24]7 apparently is not even attempting to collect and produce documents from technical, marketing, development, or executive personnel—or, if it is doing so, it is engaging in unjustifiable delay and gamesmanship by refusing to confirm it is collecting and producing documents from the likely key witnesses that [24]7 itself, for the most part, identified. This is improper: "'Selecting search terms and data custodians should be a matter of cooperation and transparency among parties . . . .'" *Apple, Inc. v. Samsung Elect. Co.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) (quoting *DeGeer v. Gillis*, 755 F. Supp. 2d. 909, 929 (N.D. Ill. 2010)).

LivePerson is in no way suggesting that either party has an unlimited obligation to search hundreds or even scores of custodians. To do so clearly would violate the proportionality principles of the discovery rules. Nevertheless, the disparity here is stark: In a case about what

---

[3] That [24]7's selection is arbitrary and incomplete is further demonstrated by the fact that, after de-duplication, fully three-quarters of the documents it produced came from ***just one of the seven*** custodians.

*[24]7 did behind the scenes*, LivePerson for its own discovery responses looked across the spectrum of roles—sales, marketing, technical, executive—and clients fairly encompassed within the scope of [24]7's requests, and identified 28 custodians from whom it would be reasonable to collect documents. And there was no hiding the ball after the fact: LivePerson has identified all 28 custodians, both through its initial disclosures as well as through custodian information provided electronically with each round of its productions that instantly enables [24]7 to see exactly from whom the documents came. [24]7's deficiency is obvious in comparison.

Even now, LivePerson has not insisted that [24]7 collect and produce documents from an arbitrary number of custodians, or even match LivePerson's number of custodians. Rather, by reviewing the documents produced to date and [24]7's interrogatory responses, LivePerson identified twelve glaring omissions as a starting point and asked [24]7 to produce documents from those custodians. Once that has been completed—and at that point [24]7 still would be at just two thirds of the number of custodians from whom LivePerson collected—those additional documents may point to a handful of other necessary custodians. At bottom, LivePerson is taking a reasonable and incremental approach to sampling each of the relevant roles in an effort to get the information it needs and is entitled to, without imposing any undue burden on [24]7.

It is not reasonably debatable that the custodians from whom LivePerson now asks the Court to order production will have relevant documents. Four of them are the people identified in [24]7's initial disclosures. Six more are identified in [24]7's interrogatory responses, and most of those also are copied on or the authors of hot documents like those filed under seal with LivePerson's response to [24]7's motion to avoid producing its source code. The remaining two are supervisory personnel who were personally and directly involved in those same hot documents and whom [24]7 has *failed to identify* in any written discovery responses. [24]7

should be compelled to collect and produce these custodians' documents promptly. *See*, *e.g.*, *Nycomed*, 2010 WL 3173785, at *3; *Dugan v. Lloyds TSB Banks, PLC*, 2013 WL 5226964, at *1 (N.D. Cal. Sept. 17, 2013) (compelling production from eight additional custodians after deficiencies were identified); *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609, 620 (S.D.W.V. 2010) (compelling production from ten additional custodians where earlier documents suggested these custodians would have "additional, highly relevant materials").

      **B.**      **[24]7 Should be Compelled to Disclose Basic Identifying Information About Relevant Personnel**

Additionally, [24]7 should be compelled to provide basic identifying information about possible deponents in this action. All LivePerson is asking for is the employment status and present or last known location of these people, which should have been included in [24]7's initial disclosures or, at minimum, in response to the interrogatories that specifically asked for this information. "Discovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long test of Rule 26 with these examples." FED. R. CIV. P. 26, advisory committee's note (2015 amendments).

As detailed above, the winnowing of all employees, first to possible witnesses and then to actual deponents, should not be a process of obfuscation. The obligation to make initial disclosures was designed to "accelerate the exchange of basic information about the case and eliminate the paper work involved in requesting such information." FED. R. CIV. P. 26, advisory committee's note (1993 amendment); *see also Biltrite Corp. v. World Road Markings, Inc.*, 202 F.R.D. 359, 362 (D. Mass. 2001) ("The obvious purpose of the disclosure requirement of Rule 26(a)(1)(A) is to give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation").

In any event, LivePerson also expressly requested this information via interrogatory fully a year ago. [24]7 failed to answer, despite that this is the sort of information counsel typically exchange cooperatively even in the absence of a formal request, to facilitate the orderly scheduling of depositions. Now, revising history, [24]7 wrongly says LivePerson should "serve interrogatories requesting that information." (Ex. 2.) But LivePerson already did so, and [24]7 should now be ordered to respond. *See Evans v. Port Auth. of New York and New Jersey*, 201 F.R.D. 96, 98-99 (S.D.N.Y. 2001) (sanctioning party for "transparently evasive" response, which "thwarted" the Defendant's effort to "make intelligent decisions about whom to interview and depose").

Moreover, given [24]7's inaction for nearly three weeks since this Court's last order to respond, and the potential that scheduling depositions under the Hague Convention could take many months, this Court should now impose on [24]7 a short and certain deadline for its complete response.

## IV. CONCLUSION

As shown above, discovery in this case is starting to follow a predictable pattern of stonewalling and clock-management. [24]7 is refusing to fulfill entirely mundane discovery obligations. The Court should therefore order [24]7 promptly to collect and produce documents responsive to LivePerson's discovery requests from the twelve custodians listed in Exhibit 1 and to promptly provide the employment status and last known location of the possible witnesses listed in Exhibit 6.

Dated: April 11, 2016

By: /s/ Daniel H. Tabak

Daniel H. Tabak
dtabak@CohenGresser.com
Christopher T. Wheatley
cwheatley@CohenGresser.com
**COHEN & GRESSER LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Fax: (212) 957-4514

J. Michael Huget (MI P39150)
mhuget@honigman.com
Jeffrey K. Lamb (MI P76738)
jlamb@honigman.com
Roger P. Meyers (MI P73255)
rmeyers@honigman.com
Sarah E. Waidelich (MI P80225)
swaidelich@honigman.com
Andrew W. Clark (MI P79165)
aclark@honigman.com
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
315 East Eisenhower Parkway
Suite 100
Ann Arbor, MI 48108
Telephone: (734) 418-4200
Fax: (734) 418-4257