# Exhibit J

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Sharre Lotfollahi
To Call Writer Directly:
(213) 680-8673
sharre.lotfollahi@kirkland.com

333 South Hope Street
Los Angeles, California  90071

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

December 27, 2017

Alex Parker
O'Melveny & Myers LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823

*via email*

Re:   *LivePerson, Inc. v. [24]7.ai, Inc.* (Case No. 3:17-cv-01268)

Dear Alex,

      I write to respond to your letter of December 17, 2017 regarding LivePerson's Corrected Amended Second Supplemental Response to Interrogatory No. 9 and LivePerson's Amended First Supplemental Response to Interrogatory No. 10, which were served on December 13, 2017.

      As an initial matter, [24]7's continued attempt to focus solely on raising alleged complaints about LivePerson's disclosures concerning its trade secrets and [24]7's misappropriation—without providing any substantive answer whatsoever to LivePerson's Interrogatory Nos. 1 and 4, which responses were due pursuant to the Court's schedule long ago—is improper.  LivePerson has diligently and in good faith worked to address each and every one of the issues raised by [24]7, yet despite admitting on the lead counsel meet and confer that at least a number of the trade secrets identified by LivePerson in response to [24]7's Interrogatory No. 9 long ago were sufficiently specific, [24]7 still has not provided any substantive response to any aspect of LivePerson's Interrogatories No. 1 and 4.

      The Court's scheduling order mandated that [24]7's responses be provided on October 12, 2017 (extended by LivePerson to November 13, 2017 as a courtesy).  [24]7 did not ask the Court's permission to disregard the date in the schedule for providing a substantive response. Nor did [24]7 comply with LivePerson's request to provide a substantive response no later than December 18, 2017, or even with its suggestion during a lead counsel meet and confer that it would provide substantive responses by December 22, 2017.  Rather, [24]7 now says that it may provide substantive responses to LivePerson's interrogatories sometime "early" in January, but

# KIRKLAND & ELLIS LLP

Alex Parker
December 27, 2017
Page 2

without providing any specific date.  At this point, [24]7's failure to provide its substantive positions to these interrogatories has severely prejudiced LivePerson, and the repeated attempts to criticize LivePerson's interrogatory responses—without providing any substantive response to LivePerson's request—is wholly unreasonable.  With only a few weeks left of fact discovery, [24]7's failure to provide its contentions regarding its trade secret misappropriation has prejudiced LivePerson.  LivePerson will move to preclude and strike any attempt by [24]7 to now serve untimely responses defending against LivePerson's trade secret misappropriation claims.

With respect to the specific complaints about LivePerson's trade secrets disclosure identified in your letter, we respectfully reject [24]7's characterization that LivePerson's response to Interrogatory No. 9 "continues to suffer from certain problems and lack of clarity," and respond specifically to those complaints below.  But more importantly, LivePerson takes issue with [24]7's continued attempts to feign ignorance over [24]7's systemic and knowing efforts to misappropriate LivePerson's technology.  To wit, [24]7's own internal emails and documents demonstrate a profound understanding of the identity and nature of proprietary intellectual property generally, and—relevant here—expressly acknowledge LivePerson intellectual property that your correspondence continues to describe as unclear or confusing.

### Trade Secret Interrogatory No. 9

The specific issues you raise in your letter regarding LivePerson response to Interrogatory No. 9 are addressed below.  Please note that nothing in this letter shall limit, and LivePerson hereby expressly reserves, its right to supplement its trade secret identification as LivePerson's investigation of facts and discovery of information and documents relating to [24]7's misappropriation are continuing, including in light of the continuing prejudice caused by [24]7's failure to provide substantive responses to LivePerson's discovery requests.

**Rules and Variables.**  As Trade Secret Nos. 1–23 clearly state, LivePerson claims as its trade secrets the "conditions for action, the specific variables taken as inputs to the conditions, and the particular actions taken with respect to the LivePerson rules" specified in the cited documents and the "information tracked, the manner of tracking the information disclosed, and the specific value returned for the variables listed" in the cited documents.  To the extent that [24]7 is concerned that LivePerson claims as separate trade secrets each of the conditions, variables, and actions taken with respect to each of the rules contained within the documents cited in Trade Secret Nos. 1–14, LivePerson confirms that is not the case.  Similarly, to the extent that [24]7 is concerned that LivePerson claims as separate trade secrets the information tracked, the manner of tracking the information disclosed, and the specific value returned for the variables contained within the documents cited in Trade Secret Nos. 15–23, LivePerson confirms that is not the case.  In other words, Trade Secret Nos. 1–23, which relate to rules and variables,

# KIRKLAND & ELLIS LLP

Alex Parker
December 27, 2017
Page 3

are 23 trade secrets, corresponding directly to the numbering scheme LivePerson provided. As we have discussed at length during the lead counsel meet and confers, we believe it is clear that the law does not require use of every single aspect of a trade secret in order for use-related misappropriation liability to occur with respect to that trade secret (of course, there are other types of misappropriation liability as well), but to the extent there is a dispute about that legal issue, here is not the proper forum for resolving it—as [24]7 confirmed during a lead counsel meet and confer.

For the same reason [24]7 has acknowledged that Trade Secret Nos. 1-23 are sufficiently specific, there is no valid reason why [24]7 can "not understand" Trade Secret Nos. 14 and 23. It is not the case that these two trade secrets "add nothing to the other 'rule' and 'variable' trade secrets," because these trade secrets—just like Trade Secret Nos. 1-23, consist of the specific compilation of rules and variables identified in Appendices A and B, which are identified as 2 trade secrets, in just the same way that each of Trade Secret Nos. 1-23 are each a trade secret.

**Canned Chat Responses.** As Trade Secret Nos. 24 and 25 clearly state, LivePerson claims as trade secrets the "collection of canned chat responses, including their conditions, and sorting of such canned chat responses into strategic groupings designed to address common visitor issues," as set forth in 247_SDNY559_002804154 and 247_SDNY559_002804155. LivePerson confirms that it has claimed the "collection," of the canned chat responses, *i.e.* the compilation the canned chat responses, including their conditions and groupings as they are shown in the cited documents.

**Reports.** As LivePerson expressly stated with regards to Trade Secret Nos. 26–40 and 55, LivePerson claims as its trade secrets the "compilation of data" that was "obtained, assembled, and compiled by LivePerson" in certain types of reports and documents. LivePerson confirms that it has claimed as trade secrets the compilation and analysis of particular data, which are embodied by the reports and data metrics described in the documents cited in those trade secrets. Those compilations of course include the data itself. Your December 17 letter alleges that LivePerson "lump[ed] these 'report' trade secrets in the category of 'data-related trade secrets,'" in its response to Interrogatory No. 10, thereby "confusing the previous clarifications and rendering the identification of the trade secrets unclear." As LivePerson stated at the beginning of its Amended First Supplemental Response to Interrogatory No. 10, "LivePerson's organization of its discussion regarding its trade secrets in its response below ***is for convenience only*** and is not mutually exclusive or limiting." *See* LivePerson's Amended Supplemental Response to Interrogatory No. 10, at 11 (emphasis added). Thus, LivePerson broadly grouped its trade secrets into four categories as a matter of convenience ***only*** to assist [24]7 in understanding LivePerson's trade secrets. To the extent [24]7 would prefer to think of Trade Secret Nos. 26–40 and 55 as a distinct "reports" category separate and apart from from the "data" trade secrets, that is a matter of semantics and [24]7's prerogative.

# KIRKLAND & ELLIS LLP

Alex Parker
December 27, 2017
Page 4

  **Marketing Strategy.**  LivePerson confirms, and Trade Secret No. 42 makes clear, that LivePerson claims the marketing strategy embodied by the specific "collection of e-mail templates," that are set forth in 247_SDNY559_001556081, rather than any particular e-mail template standing on its own or LivePerson's marketing strategy generally.

  **Tag-Related Trade Secrets.**  Your December 17 letter claims that Trade Secret Nos. 43–47, *i.e.* LivePerson's "tag-related trade secrets," are "vague and unclear" and that LivePerson's response to Interrogatory No. 10 "further confuses the issue."  Your December 17 further notes that the "scope" of those trade secrets are "unclear" because "LivePerson does not distinguish between the alleged trade secrets and because LivePerson does not describe any acquisition, use, or disclosure of the alleged trade secrets."  LivePerson disagrees that Trade Secret Nos. 43–47 are unclear.  Those trade secrets specifically describe, for example, the *specific information* that LivePerson tracks using its tag, such as for example "whether a web visitor searched internally on the website" or "whether a web visitor is a new visitor or a repeat visitor."  *See* LivePerson's Corrected Amended Suppl. Response to Interrogatory No. 9 at No. 43.[1]

  **Data.**  Your December 17 letter contends that Trade Secret Nos. 48–54, which cover "the XML data generated by LivePerson's smart chat platform analytics and reporting features available to chat agent managers and administrators and contained in downloadable reports" for various customers over various time frames is "impermissibly broad" because LivePerson "appears to be claiming as a trade secret all 'data' relating to the seven identified customers" for "the entire time period that LivePerson provided services to that client."  LivePerson disagrees that these descriptions are overly broad and with [24]7's characterization of these trade secrets.  LivePerson does not claim all conceivable data, but rather the specific compilations of particular data generated by the reporting features in the particular LivePerson systems identified in LivePerson's response.

  Moreover, numerous [24]7 documents and testimony from [24]7 employees indicate that [24]7 regularly downloaded and used specific LivePerson's XML data from the particular LivePerson systems identified in LivePerson's response to build and analyze its rules.  These

---

[1] Your December 17 letter specifically questions the description for Trade Secret No. 47 as insufficient notwithstanding "[t]he reference to the deposition testimony of Mr. Corriss" and what [24]7 believes is "a piece of HTML code of unspecified origin."  As Trade Secret No. 47 states, the HTML monitor tags shown in LP000726095, -6098 come from the Capital One website.  In addition, Mr. Corriss gave extensive testimony on the purpose of those tags, what was considered in creating them, and how those tags were adopted with a slightly modified naming convention by [24]7.  LivePerson will not recount Mr. Corriss's testimony here, which [24]7 can review for itself. [redacted]

# KIRKLAND & ELLIS LLP

Alex Parker
December 27, 2017
Page 5

documents and testimony are identified in LivePerson's Amended First Supplemental Response to Interrogatory No. 10.  This evidence belies [24]7's current contention that it does not understand what data is referenced in these trade secrets.  Additionally, it appears that [24]7 has failed to produce all copies of the XML data it downloaded or received from LivePerson's platform despite the clear pertinence of that data to the misappropriation issues in this case.  For this reason, LivePerson served its Sixth Set of Requests for Production on December 8, 2017.  Request No. 18 requests "All documents relating to the downloading or receipt of XML data generated by LivePerson's platform."  Once those documents are produced, we will add additional citations to LivePerson's response to Interrogatory No. 10.

### Misappropriation Contentions

Your December 17 letter claims that LivePerson's response to Interrogatory No. 10 in its entirety "is surprisingly vague," but then goes on to take issue with the substantive merits of LivePerson's contentions (e.g., by arguing about the import of the mechanism by which [24]7 obtained LivePerson's trade secrets) rather than with whether LivePerson has answered the interrogatory.  [24]7 should have presented its response to those contentions in a substantive response to LivePerson's Interrogatories Nos. 1 and 4 by the Court's deadline, rather than in correspondence purporting to complain about the merits of LivePerson's contentions.  As noted above, should [24]7 attempt to belatedly provide a substantive response to those interrogatories, LivePerson will move to strike that response.

[24]7 first complains that LivePerson did not "provide any specific evidence or assertions" supporting LivePerson's claim that [24]7 "abused its access to LivePerson's technology platform in order to access, use, and take LivePerson's tag-related trade secrets for use in developing its own competing platform PxAssist."  But [24]7 ignores the fact that LivePerson's response did provide evidence of how [24]7 interfered with the operation of LivePerson's tag-related trade secrets by injecting spyware and passing variables to LivePerson to collect data and to learn about how LivePerson's systems operated.  The documents that LivePerson cited in its response show that [24]7 learned from, and used, LivePerson's tag-related trade secrets, in part, as a conduit to "capture" and misappropriate other LivePerson trade secrets. *See e.g.*, 247_SDNY559_002797798 ("Px tag needs to be added just before the closing of Body tag i.e. BEFORE </BODY>. **Px tag will collect customer journey information, capture variables and web log.**" (emphasis added)).

In addition, your December 17 letter claims that LivePerson "ignores" the fact that documents show that [24]7 acquired LivePerson trade secrets from customers, but LivePerson vehemently disagrees that the circumstances by which [24]7 admittedly obtained LivePerson's trade secrets exonerates [24]7 from liability for its misappropriation.  As noted above, however, a discovery dispute about the sufficiency of an interrogatory response is not the proper forum for

# KIRKLAND & ELLIS LLP

Alex Parker
December 27, 2017
Page 6

resolving a substantive dispute like this about the merits of LivePerson's claim. Had [24]7 wished to provide its counter-positions to LivePerson's trade secrets contentions, it should have done so by the Court's deadline long ago. The merits of the parties' positions will be resolved later in the case, *e.g.*, through trial or (if appropriate) summary judgment.

      Finally, though your December 17 letter concludes with the statement that [24]7 "will vigorously oppose any attempt by LivePerson to introduce new evidence of misappropriation not contained in the ***present*** response to Interrogatory 10 if LivePerson does not have good cause for that later addition," emphasis added, we note that LivePerson has expressly reserved its "right to modify and/or supplement its response based on further investigation or discovery." [24]7's statements in its letter will not limit LivePerson's ability to do so.

      Sincerely,

      */s/ Sharre Lotfollahi*

      Sharre Lotfollahi