UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIVEPERSON, INC., <br>     Plaintiff, <br> v. <br> [24]7.AI, INC., <br>     Defendant. | Case No. 17-cv-01268-JST <br><br> **ORDER DENYING MOTION TO EXCLUDE CERTAIN TESTIMONY OF LIVEPERSON'S EXPERT WITNESS DR. WILLIAM CHOI** <br><br> Re: ECF No. 534 |

Now before the Court is Defendant [24]7.ai, Inc.'s ("[24]7") Motion to Exclude Certain Testimony of LivePerson's Expert Witness Dr. William Choi. ECF No. 533-3.[1] The Court will deny the motion.

I. **BACKGROUND**

The background of this trade secret case[2] has been extensively described in prior orders. *See, e.g.,* ECF No. 492. Briefly, Plaintiff LivePerson, Inc. ("LivePerson") provides online chat engagement services through a digital platform that it sells to website operators. Chat engagement allows website operators to initiate real-time text-based communications with website users directly on the website. LivePerson's platform attempts to maximize the effectiveness of those chat engagements by identifying when initiating a chat with a particular user is most likely to produce a positive outcome, such as a sale. The platform uses "rules" that recommend initiating a

---

[1] Because this order contains or refers to material subject to sealing orders, the Court initially filed the order under seal and provided the parties seven days to propose redactions. ECF No. 559 at 1 n.1. The parties then filed a joint notice stating that they do not request any redactions. ECF No. 563. Accordingly, the Court now files the order on the public docket.

[2] The parties also have a companion patent infringement case which is not at issue here. *[24]7.ai, Inc., et al v. LivePerson, Inc.*, Case No. 3:15-cv-02897-JST (N.D. Cal.).

chat based on variables such as the user's navigation history on the website. LivePerson develops rules and variables specific to each customer and combines that information into a Design Requirements Document ("DRD"), which it shares with the customer. LivePerson's chat platform also collects and analyzes XML data based on users' visits to the customer's websites. LivePerson makes those data reports accessible to its customers for use in their operations, and LivePerson also uses that data to further develop its predictive models. *See* ECF No. 533-5 (Third Supplemental Expert Report of William S. Choi, Ph.D.) ¶ 17 ("[E]ach of the 'data' trade secrets consists of data tracking LivePerson metrics such as web visitor behavior, rule performance, chat volumes and content that is output from LivePerson's predictive chat platform and can be in the form of either (i) XML data, or (ii) reports."); *id.* ¶ 18 ("The XML data, in contrast, provides granular data about each interactive chat, including the transcripts of the chats themselves, which can be further utilized to draw additional conclusions.").

Thus, for purposes of this order, and as the foregoing would suggest, there are two types of LivePerson trade secrets at issue in this motion: "rules" trade secrets, which involve the combinations of rules and variables just identified, and "data" trade secrets, which consist of the XML data gathered during users' visits to LivePerson's customers' websites.

[24]7 also operates in the online chat industry. For a period of time, both companies operated under a series of agreements to market and provide services to mutual customers, through which [24]7 gained access to the rules and data developed for certain LivePerson customers. LivePerson alleges that [24]7 improperly used LivePerson's trade secret information to develop its own competing chat platform and take LivePerson's customers. LivePerson further alleges that [24]7 continued to make use of LivePerson's protected information while providing chat platform services to those customers.

LivePerson has retained economist William S. Choi, Ph.D., to render an opinion on damages. The Court previously granted a motion by [24]7 to exclude portions of Dr. Choi's opinion on *Daubert* grounds. ECF No. 498; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Specifically, the Court found that "Dr. Choi's opinion must be excluded because he does not apportion trade secret misappropriation damages among particular alleged trade secrets, and

2

offers no methodology for the jury to calculate trade secret misappropriation damages on fewer than all of the 28 alleged trade secrets in the case. And because the initial trial is a bellwether trial in which only 15 of the 28 alleged trade secrets will be at issue, the jury's verdict will necessarily encompass fewer than all of the alleged trade secrets." ECF No. 498 at 3 (citation omitted).

Following this ruling, the Court granted leave to LivePerson to submit a "supplemental damages report . . . that addresses the Court's *Daubert* ruling," ECF No. 519, which LivePerson did. [24]7 then filed this motion.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Trial courts serve a "gatekeeping" role "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (citing *Daubert*, 509 U.S. 579). They should screen "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (citation omitted). The reliability test under Rule 702 and *Daubert* "is not the correctness of the expert's conclusions but the soundness of his methodology." *Id.* (citation omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). The proponent of the expert testimony has the burden of proving admissibility. *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

3

## III. DISCUSSION

### A. Dr. Choi's Third Supplemental Report

In his Third Supplemental Report, Dr. Choi addresses the Court's prior concerns by valuing the alleged trade secrets using a three-step process. First, he apportions damages across the particular LivePerson customers with which the specific trade secrets are associated. Second, he allocates damages among the three trade secrets categories: rules, data, and tags. Third, Dr. Choi allocates damages between individual trade secrets within the same category (i.e., among all the rules trade secrets on the one hand and all the data trade secrets on the other).[3]

As Dr. Choi explains, the "rules" trade secrets consist of more than just the rules themselves, but also consist of variables:

> In some instances, the "rules" trade secrets comprise different trade secret information contained within a single document. For example, one "rule" trade secret may comprise the *rules* contained in a LivePerson trade secret document, while a different "rule" trade secret may comprise the *variables* contained in the same document . . . . [T]he rules use the variables to function and therefore the rules and variables work together to form LivePerson's predictive chat technology.

ECF No. 533-5 ¶ 13.

Using that backdrop, Dr. Choi then opines that damages can be further allocated among the individual rules trade secrets based on the total amount of predictive information contained in each trade secret DRD. *Id.* ¶ 15. The amount of predictive information contained within each trade secret, according to Dr. Choi, is reflected by the number of individual rules utilized by that trade secret, because the time and cost of generating the trade secret increases with the number of rules.

> In addition, the rules trade secrets for any given customer may reasonably be assigned a relative value (i.e., an allocated weight) based on the amount of information (namely, the number of rules) described in the trade secret document. Specifically, after reviewing the evidence, the number of rules in a trade secret document is a reasonable indication of the volume of predictive information contained therein, and hence the relative importance of the trade secret within the context in which it is used. That is a reasonable

---

[3] [24]7's motion does not address the "tags" category in Dr. Choi's opinion, but instead confines its arguments to his opinions about rules trade secrets and data (or XML) trade secrets. The Court therefore does the same.

4

> inference given my understanding that generally the time and cost of developing each rules trade secret increases with the number of rules, as each separate rule must be individually constructed.

*Id.* Dr. Choi further opines that the more rules a trade secret includes, the greater the volume of predictive information is included in the trade secret, which provided [24]7 with a commensurately greater ability to take LivePerson's customers:

> It is my understanding that the greater volume of predictive information, or the greater number of rules, provided [24]7 with more knowledge of LivePerson's predictive functionality and also provided [24]7 with the ability to transition customers more seamlessly. Accordingly, for all these reasons, individual rules trade secrets for a given customer can properly be valued (weighted) relative to one another in accordance with the number of rules contained in the particular trade secret.

*Id*. ¶ 16.

As to the XML trade secrets, Dr. Choi determined the value of the XML data as to each of the customers [24]7 allegedly wrongfully appropriated from LivePerson, assuming that for each customer [24]7 misappropriated a sufficient quantity of that customer's data to construct its competing product for that customer. Stated simply, the value of an XML data trade secret is the value conferred on [24]7 by the transfer of the customer associated with that trade secret. LivePerson proposes that that this value be awarded if it proves that [24]7 has misappropriated "a sufficient amount of LivePerson data to take LivePerson's customers and cause lost profits." ECF No. 542 at 5.

### B. Rules Trade Secrets

[24]7 acknowledges that Dr. Choi has now assigned different values to each *trade secret*, but argues that the Court should exclude his testimony nonetheless because there is no basis for Dr. Choi's assumption that each *rule* should be assigned the same weight. It argues that the Court's prior admonition that "[s]ome trade secrets are more valuable than others," ECF No. 498 at 4, must also apply to LivePerson's rules and that Dr. Choi violates this admonition.

The Court is not persuaded by this argument. Other courts have approved calculations of damages employing similar per-unit methodologies. For example, the District of Massachusetts recently considered an almost identical argument to the one [24]7 makes here. *Iconics, Inc. v.*

*Massaro*, 266 F. Supp. 3d 461 (D. Mass. 2017). In that case, the plaintiff moved to exclude the defendant's damages expert's opinion that apportioned profits by "assuming each customer contributed equally to [defendant's] operating profit and that each line of code contribute[d] equally to the software's overall value." *Id.* at 476. As [24]7 argues here, the plaintiff in *Iconics* argued that "some clients, some lines of code, and some trade secrets are more important and valuable than others." *Id.* The court rejected the plaintiff's argument, reasoning that the expert "justified his apportionment methodology and applied it in a defensible and replicable way. The merits of that apportionment may be explored during cross-examination at the appropriate time." *Id.*

Similarly, Judge Freeman of this district recently denied a motion to strike expert damages testimony in a patent case in which plaintiffs' expert "calculate[d] Defendants' alleged savings in R&D fees by totaling Plaintiffs' mask design fees for the 139 projects they allege[d] contributed to the development of the accused trade secrets, multiplying this by the ratio of total R&D expenses to total mask fees (to estimate total expenses for the 139 projects), and using surface area ratios to apportion for the features that relate to trade secrets." *VIA Techs., Inc. v. ASUS Comput. Int'l*, No. 14-CV-03586-BLF, 2017 WL 3051048, at *6 (N.D. Cal. July 19, 2017). In other words, the expert "us[ed] surface area as a proxy for design effort," *id.*, much as Dr. Choi uses the number of rules as a proxy for the effort required to construct a trade secret. As [24]7 does here, Defendants moved to exclude the expert's testimony as unreliable, arguing that the expert "[did] not attempt to measure the actual benefit received by Defendants from their alleged trade secret misappropriation." *Id.* Judge Freeman denied defendants' motion to exclude the expert's testimony, finding that their concerns could be adequately addressed on cross-examination. *Id.* at *7.

In addition to the opinions of these courts, the Court has also considered the testimony of [24]7's damages expert, Suzanne Stuckwisch. She admitted that there is no defined methodology for allocating damages among trade secrets:

> Q: There is no defined methodology in the law or in this industry that you know of, is there for allocating damages among trade secrets?

6

A: That is correct.

ECF No. 541-8 (Stuckwisch Depo.) at 7-8. In fact, Ms. Stuckwisch conceded later in her deposition that she would apply Dr. Choi's methodology to allocate damages for the lost profits associated with Allianz, one of the additional customers that [24]7 allegedly obtained from LivePerson. *Id.* at 426:18-21 ("Q. And then you would have the jury apply Dr. Choi's allocation methodology for Allianz; correct? A. Yes."); *id.* at 421:4-7 ("Q. And am I correct that you are not providing an independent allocation methodology? A. Correct."). [24]7 does not explain or qualify this testimony in its reply brief.

For all these reasons, and like the courts in *Iconics* and *VIA*, this Court finds that Dr. Choi's opinion is sufficiently sound and reliable that it can be admitted at trial.

**C.  XML Trade Secrets**

As to Dr. Choi's XML secrets valuation, [24]7 argues that each XML trade secret "represents all of the data collected over several years in connection with one of three customer accounts at issue in the first trade secret trial," but "Dr. Choi offers no methodology for the jury to allocate damages if it finds only a subset of the XML data was misappropriated." ECF No. 534 at 6.

The jury will either find that [24]7 misappropriated enough of a particular customer's XML data to enable it to enroll that customer when it otherwise would not have, or it won't. If it makes that finding, [24]7 fails to explain why Dr. Choi's testimony is not an appropriate benchmark for LivePerson's damages. Instead, it makes arguments about the completeness of LivePerson's identification of its customer data that are not relevant to the Court's consideration of Dr. Choi's testimony.

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, [24]'s motion to exclude Dr. Choi's testimony is denied.

**IT IS SO ORDERED.**

Dated: July 12, 2019



JON S. TIGAR
United States District Judge