Michael W. De Vries (S.B.N. 211001)
Sharre Lotfollahi (S.B.N. 258913)
Benjamin A. Herbert (S.B.N. 277356)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500
Email:  michael.devries@kirkland.com
Email:  sharre.lotfollahi@kirkland.com
Email:  benjamin.herbert@kirkland.com

Adam R. Alper (S.B.N. 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500
Email:  adam.alper@kirkland.com

Joshua L. Simmons (admitted pro hac vice)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  joshua.simmons@kirkland.com

*Attorneys for Plaintiff LivePerson, Inc.*

Darin W. Snyder (State Bar No. 136003)
dsnyder@omm.com
Mark E. Miller (State Bar No. 130200)
markmiller@omm.com
Geoffrey H. Yost (State Bar No. 159687)
gyost@omm.com
Alexander B. Parker (State Bar No. 264705)
aparker@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

*Attorneys for [24]7.ai, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LIVEPERSON, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>[24]7.ai, INC.,<br><br>　　　　　Defendant. | Case No. 4:17-CV-01268-JST<br><br>**JOINT STATEMENT REGARDING BIFURCATING THE AMOUNT OF PUNITIVE DAMAGES PORTION OF THE TRIAL** |

In accordance with the Court's Orders and instructions from the August 20, 2019 Jury Charge Conference and in advance of the September 13, 2019 pretrial conference, LivePerson, Inc. and [24]7.ai, Inc. (collectively, "the parties") hereby submit this joint statement with their respective positions regarding bifurcating the portion of the trial relating to the amount of punitive damages. [24]7 seeks bifurcation and LivePerson opposes.

### [24]7's Position

[24]7 seeks bifurcation of any trial to determine the amount of punitive damages (if any) from the liability trial under Federal Rule of Civil Procedure 42(b) because bifurcation will minimize juror confusion and avoid undue prejudice to [24]7. Any punitive damages phase involves the jury hearing, for example, inflammatory evidence of alleged other bad acts of [24]7 that have nothing to do with resolving liability under LivePerson's trade secret and unfair competition claims. Also, punitive damages are an extraordinary remedy, reserved for egregious behavior, such as when a defendant's wrongdoing is "not simply intentional but evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations." *Ross v. Louise Wise Services*, 8 N.Y.3d 478, 489. In *Ross*, New York's highest court held that the misconduct justifying punitive damages must be "exceptional, 'as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness … or has engaged in outrageous or oppressive intentional misconduct, or with reckless or wanton disregard of safety or rights." *Id.* Therefore, it is likely that the jury never reaches a determination of the amount of punitive damages, and bifurcation will serve judicial economy.

Federal Rule of Civil Procedure 42(b) empowers courts to bifurcate a trial for any one of the following reasons: (1) convenience; (2) to avoid prejudice; or (3) to expedite and economize proceedings. *Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, 2013 WL 4425704, at *2 (N.D. Cal. Aug. 14, 2013). Courts may also consider potential juror confusion that would result without bifurcation. *Barker v. Yassine*, 2016 WL 4264149, at *3 (E.D. Cal. Aug. 15, 2016). District courts have "broad discretion" to determine whether bifurcation is appropriate. *Am. Steel & Stairways*, 2013 WL 4425704, at *2; *see also Hayes v. Arthur Young & Co.*, 34 F.3d 1072 (9th

Cir. 1994). Here, bifurcation is appropriate for all of these reasons.

**[24]7 Would Be Unduly Prejudiced By Evidence of Other "Bad" Acts.** Bifurcation is warranted where the introduction of evidence that is relevant to punitive damages would be unduly prejudicial if disclosed during the liability phase. *See e.g. Hermosillo v. Cty. of San Bernardino*, 2017 WL 5479645, at *3 (C.D. Cal. Feb. 16, 2017); *Allen v. City of Los Angeles*, 2012 WL 1641712, *2 (C.D. Cal. 2012) ("issues concerning punitive damages should be tried only if the jury finds malice"); *Kanellakopoulos v. Unimerica Life Ins. Co.*, 2018 WL 984826, at *6 (N.D. Cal. Feb. 20, 2018) ("The Court will bifurcate the trial such that all issues other than the amount of punitive damages will be addressed in Phase I, and the amount of punitive damages (if any) will be addressed in Phase II."). Under such circumstances, bifurcation is appropriate because "[p]resentation of such evidence only after a determination of actual damages would eliminate any possibility that the jury could consider the evidence for an improper purpose." *Scheufler v. Gen. Host Corp.*, 895 F. Supp. 1411, 1414 (D. Kan. 1995).

Here, LivePerson has indicated that it intends to present evidence regarding, for example, "how often [24]7 had committed similar acts of this type in the past." *See* Dkt. 581 at 40:14. During meet and confers, [24]7 asked LivePerson to identify which evidence, if any, LivePerson contends is uniquely relevant to the amount of punitive damages. LivePerson has not identified any such evidence, but it contends that evidence relevant to the amount of punitive damages is also relevant to its claims for trade secret misappropriation and unfair competition.

Contrary to LivePerson's contentions, however, it appears that LivePerson intends to introduce irrelevant evidence unrelated to either trade secret misappropriation or unfair competition. LivePerson's trade secret misappropriation claim is limited to 15 specific alleged trade secrets ("ATSs") that relate to three customers—Optus, Sears, and Capital One. Dkt. 606 at 3-4. And the parties have stipulated to limit LivePerson's unfair competition to certain acts relating to those same three customers. *Id.* at 8-9. But LivePerson has identified numerous trial exhibits and deposition testimony that relate to other purported bad acts outside the scope of the trial. One example relates to [24]7's hiring of a LivePerson employee. After the employee was hired, another employee interviewed him for certain information on LivePerson. PTX 134.

LivePerson will likely use this exhibit to portray [24]7 as improperly seeking inside information on LivePerson. But this document is unrelated to the 15 ATSs at issue, and seeking information from LivePerson employees is not one of the acts of unfair competition in the parties' stipulation. Another example relates to a test that Sears requested in which [24]7 would pit its chat software against LivePerson's software. LivePerson identified as a trial exhibit an email in which a [24]7 employee discussed "[m]aking sure we have the best performing [chat] agents" using the [24]7 chat software during the test. PTX 61. While [24]7 contends that it did nothing improper, this material should still be excluded because it is irrelevant to the 15 ATSs at issue and outside the scope of the parties' stipulation on unfair competition. Accordingly, these and other documents are, at best, evidence of other bad acts that could be used, if at all, at a bifurcated proceeding on the amount of punitive damages. It would be highly prejudicial to allow LivePerson to introduce them during the main liability phase, because they are wholly irrelevant to the issues to be decided relating to trade secret misappropriation and unfair competition.

Moreover, these are merely examples. There are numerous other LivePerson trial exhibits subject to [24]7's motion in limine No. 1, which seeks to exclude exhibits and testimony that that is not at issue in the first trial. Should the Court rule in [24]7's favor on that motion, such exhibits should not be admissible to prove liability. They would only be admissible, if at all, in a bifurcated trial on the amount of punitive damages because they would present evidence of [24]7's acts that are not relevant to LivePerson's underlying causes of action.

**Bifurcation Would Conserve Judicial Resources.** Bifurcation also is appropriate to defer "possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *see also Barker*, 2016 WL 4264149 at *3 (granting motion to bifurcate where it "would expedite and economize trial by precluding the presentation of evidence or argument relating to punitive damages unless and until it is necessary"). Here, LivePerson has little chance of recovering the extraordinary remedy of punitive damages. Should the jury determine that no punitive damages are warranted, judicial resources will be conserved because evidence potentially relevant only to punitive damages would be reserved for presentation only after the jury, and only if the jury,

determined that such damages are warranted.

**Jury Confusion Is Highly Likely Without Bifurcation.** LivePerson asserts 15 trade secrets and an unfair competition claim in this trial. These topics will already be difficult for the jury to decide. At the same time, LivePerson seeks to present additional evidence relevant to other trade secrets, customers, and financial issues not specifically relevant to those claims. The jury will necessarily have a difficult time parsing what evidence is relevant to liability from evidence relevant solely to the amount of punitive damages. The jury, moreover, is likely to be biased in its determinations regarding liability based on evidence presented regarding "other bad acts" and [24]7's ability to pay.

For these three reasons, the Court should bifurcate liability from the amount of punitive damages at trial.

## LivePerson's Position

As the Court noted during the jury charge conference, federal courts typically do not bifurcate the jury's determination of whether punitive damages are appropriate from the amount of punitive damages to award. Instead, "the normal procedure is to try compensatory and punitive damage claims together with appropriate instructions" to the jury. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (affirming a district judge's decision not to bifurcate because it "comported with normal trial procedure").

Trying both issues together is particularly appropriate here as the issues of trade secret misappropriation by improper means, unfair competition, and whether punitive damages are appropriate are necessarily intertwined with the issue of the amount of punitive damages that should be awarded. LivePerson's unfair competition claim requires evidence of "bad faith," and its misappropriation claim requires proof that [24]7 discovered LivePerson's trade secrets through "improper means." Likewise, the agreed jury instruction for determining the amount of punitive damages requires the jury to consider issues such as "the character of the wrongdoing; whether the conduct demonstrated an indifference to, or a reckless disregard of, the health, safety or rights of others; whether the acts were done with an improper motive or vindictiveness; whether the act or acts constituted outrageous or oppressive intentional misconduct." *See* Special Instr. 8:

Punitive Damages. The Ninth Circuit has denied similar requests to bifurcate issues of punitive damages when the issues of liability and damages are so interwoven that bifurcation could not be ordered without injustice. *United Airlines, Inc. v. Weiner*, 286 F.2d 302, 306 (9th Cir. 1961) (reversing bifurcation order of district court where "[t]he question of damages is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty which would amount to a denial of a fair trial."); *see also Suenos LLC v. Goldman*, 633 F. App'x 874, 878 (9th Cir. 2015) (affirming decision not to bifurcate where evidence "overlapped"); *Am. Steel & Stairways,* 2013 WL 4425704, at *3 (declining to bifurcate in part where the issues "are not wholly distinct from each other, and bifurcation would likely lead to unnecessary repetition in evidence and arguments").

If [24]7's request is granted, it will waste judicial and party resources by requiring the parties, their witnesses, and the Court to rehash much of the evidence presented in the first phase of the trial to determine the amount of punitive damages. Indeed, as [24]7 acknowledges, LivePerson does not intend to present evidence at trial that is solely relevant to the amount of punitive damages. This type of substantial waste of time and risk of juror confusion regarding why they are hearing the same evidence again is precisely why these issues are not ordinarily bifurcated. Further, this case has been pending for many years, and has already been trifurcated into two trade secrets trials and a patent trial. Bifurcating this narrow issue unnecessarily "would set this schedule back even further." *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-CV-02726-TSH, 2018 WL 6606247, at *5 (N.D. Cal. Dec. 17, 2018); *Lam Research Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 866–67 (N.D. Cal. 2014) (finding that the "risk of prejudice does not support bifurcation" because "[g]ranting bifurcation at this late date would require this court to calendar a second jury trial in what is already an impacted trial schedule").

Faced with the foregoing, [24]7 has not offered this Court a compelling justification to break with the ordinary means by which courts try the issue of punitive damages to a jury.[1] Yet,

---

[1] [24]7 originally relied on *Rupert v. Sellers*, 48 A.D.2d 265 (1975), to support its request for bifurcation. Dkt. 581 at 41 n.65. Notably, it now has abandoned that case, likely because *Rupert* permitted bifurcation solely when net worth evidence was proffered for punitive damages purposes. 48 A.D.2d at 272. As LivePerson has stated that it is willing not to raise [24]7's net

[24]7 bears "the burden of proving that bifurcation is justified given the facts in this case." *See Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992). Indeed, to the extent that it is concerned about evidence of "other bad acts" being introduced at trial, those issues already are before the Court as part of [24]7's Motion *in Limine* No. 1. *See* Dkts. 569, 588-3 ([24]7's MIL to Exclude Evidence and Argument Not Relating to the 15 ATS). And, as discussed below, the two pieces of specific evidence [24]7 raises are relevant to more than just the amount of punitive damages. For at least these reasons, the Court should decline [24]7's request for bifurcation.

**[24]7 would not be unduly prejudiced by having all evidence presented in a single trial.** In support of its bifurcation argument, [24]7 characterizes some of LivePerson's evidence as irrelevant to its underlying claims (therefore arguing that the evidence could only be relevant to the amount of punitive damages). But the parties have already briefed this issue in connection with [24]7's Motion *in Limine* No. 1. Dkt. 569. [24]7's request for bifurcation is just an attempt at another bite at the apple to exclude this evidence. Indeed, [24]7s argues in its "bifurcation request" that one of LivePerson's exhibits should "be excluded because it is irrelevant to the 15 ATSs at issue and outside the scope of the parties' stipulation on unfair competition." But, this is precisely what [24]7's Motion *in Limine* No. 1 is directed to:

> The Court should preclude in limine LivePerson from presenting evidence and argument ***about alleged [24]7 misconduct or "bad acts" that do not relate to LivePerson's trade secret claims for the 15 Alleged Trade Secrets*** ("ATSs") at issue in the upcoming trial.

Dkt. 569 at 1 (emphasis added). And, as LivePerson has previously explained, and the parties

---

worth to resolve the bifurcation issue, *Rupert* is inapposite. [24]7's reliance on *Barker v. Yassine* and *Hermosillo v. Cty. of San Bernardino* is similarly misplaced as those cases also focus on evidence of the defendant's personal finances, which would not be at issue. *See Barker*, 2016 WL 4264149, at *3 (noting that "bifurcation would avoid potential confusion of the jurors and prejudice to defendant that might result from the presentation of evidence about defendant's personal finances and net worth"); *Hermosillo*, 2017 WL 5479645, at *3 ("[T]he Court does find that the introduction of evidence regarding defendants' personal finances would be prejudicial if disclosed during the liability phase and that bifurcation is warranted"). [24]7's other cited cases are also inapplicable. *See, e.g., Scheufler*, 895 F. Supp. at 1414 (noting that under facts of case, "[t]rial of the punitive damages issue would require different witnesses and different exhibits. To the extent that there is overlap of witnesses, the substance of their testimony would be different.")

have discussed at length, LivePerson does not intend to introduce irrelevant evidence unrelated to either trade secret misappropriation or unfair competition. Instead, LivePerson intends to present evidence that [24]7 knew that taking and using LivePerson's trade secrets fell below generally accepted standards—which is indisputably relevant to LivePerson's trade secret misappropriation claims in the first trial. For example, as part of showing that [24]7 obtained LivePerson's trade secrets through "improper means," LivePerson will show that [24]7's conduct "f[e]ll below the generally accepted standards of commercial morality and reasonable conduct." *E.g.*, Dkt. 484 at 24.

[24]7 already is well aware that the two LivePerson exhibits that [24]7 identifies above are relevant to whether it is liable for trade secret misappropriation or unfair competition. They both were cited by LivePerson's experts in their reports.

- PTX 134, the first exhibit discussed by [24]7 above, was cited by LivePerson's damages expert, William Choi. Dr. Choi cited to this document as evidence of [24]7's "Kill LivePerson" campaign which, as Dr. Choi opines, demonstrates a focused effort to displace LivePerson in the market place by using LivePerson's trade secrets. *See* Choi Op. Rpt. at 34-35 ("247_SDNY559_001571839 (Exhibit BC-11 to Crichlow Deposition) ('[W]e must connect re. the Kill-LP campaign[.]')".)

- PTX 61, the second exhibit discussed by [24]7, is cited by LivePerson's experts, Dr. Wicker and Dr. Choi. Dr. Choi cites to the document to discuss the value of signing the Sears account and taking it from LivePerson. (Choi Op. at ¶ 115.) And Dr. Wicker (LivePerson's technical expert) cites to the document because PTX 61 attaches a PowerPoint presentation that discusses using LivePerson's rules trade secrets. Wicker Op. at ¶ 162 ("[24]7's pilot consisted of two phases: [screen shot from PTX 61] (E.g., 247_SDNY559_000031899 at slide 2). Phase I, launched with the current LivePerson rules implemented in [24]7's Px Assist platform. (E.g., 247_SDNY559_000031899 at slide 2).").

[24]7's request for bifurcation is not the proper vehicle for it to object to the relevance of LivePerson's proposed evidence. [24]7 tacitly acknowledged this when it filed its MIL on this very issue. Its relevance arguments will be decided in connection with that motion and other evidentiary objections at trial. LivePerson's position is that the evidence [24]7 points to is not uniquely relevant to LivePerson's punitive damages claim, but is highly relevant to liability issues. Thus, having the jury decide the amount of punitive damages during the liability phase of the trial does not prejudice [24]7. Bifurcation in these circumstances would not be appropriate.

**Bifurcation will waste judicial resources.** [24]7's only support for its position that bifurcation would conserve judicial resources is its attorney argument that "LivePerson has little chance of recovering" punitive damages. But [24]7 misses the point: whether LivePerson recovers punitive damages or not, if the jury finds that LivePerson is entitled to punitive damages, it will still have to present its case-in-chief all over again to provide the jury the necessary context to decide the amount. *See Jones*, 2018 WL 6606247, at *5 ("[B]ifurcation would not aid judicial economy or convenience of the parties; on the contrary, bifurcation may well lead to significant additional costs, with the potential for two trials leading to an inefficient use of party, jury, and court resources."). Any "cost [will not be] justified by the scanty benefit which may be gained from bifurcation." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 11-cv-5944-JST, 2016 WL 7800818, at *2 (N.D. Cal. Oct. 3, 2016). Indeed, "there will be substantial inconvenience to the Court and jurors if the claims are bifurcated" and if the jury finds that punitive damages are warranted. *Am. Steel & Stairways,* 2013 WL 4425704, at *3.

**There is no risk of jury confusion**. [24]7 alleges that no bifurcation will result in juror confusion. [24]7's argument, however, assumes that [24]7 is correct that the evidence it points to *solely* relates to punitive damages, and as discussed above, that assumption is wrong. Moreover, any concerns regarding juror confusion regarding the complexity of this case will be mitigated by the instructions provided by the Court. *See Hangarter*, 373 F.3d at 1021 (affirming decision not to bifurcate in part where the district court issued appropriate instructions); *Am. Steel & Stairways*, 2013 WL 4425704, at *2 ("The risk of jury confusion, if any, can be addressed by specific jury instructions and a special verdict form."). Further, [24]7 has not shown that there is anything unusually complex about this case. Juries routinely consider complex cases, including deciding the amount of punitive damages. *See, e.g.*, *Lam Research r*, 65 F. Supp. 3d at 866–67 (finding "little risk of juror confusion" even complicated issues are implicated).

For the reasons set forth above, LivePerson requests that the Court deny [24]7's request to bifurcate the jury's determination of the amount of punitive damages.

By her signature below, counsel for Plaintiff attests that counsel for Defendant concurs in the filing of this document.

Dated:  September 9, 2019                              KIRKLAND & ELLIS LLP


                                                       By:   */s/ Sharre Lotfollahi*
                                                             Sharre Lotfollahi

                                                       Attorneys for
                                                       LIVEPERSON, INC.


Dated:  September 9, 2019                              O'MELVENY & MYERS LLP


                                                       By:   */s/ Darin Snyder*
                                                             Darin Snyder

                                                       Attorneys for
                                                       [24]7.AI, INC.