Michael W. De Vries (S.B.N. 211001)
Sharre Lotfollahi (S.B.N. 258913)
Benjamin A. Herbert (S.B.N. 277356)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500
Email:  michael.devries@kirkland.com
Email:  sharre.lotfollahi@kirkland.com
Email:  benjamin.herbert@kirkland.com

Adam R. Alper (S.B.N. 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500
Email:  adam.alper@kirkland.com

Joshua L. Simmons (admitted pro hac vice)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  joshua.simmons@kirkland.com

*Attorneys for Plaintiff LivePerson, Inc.*

Darin W. Snyder (State Bar No. 136003)
dsnyder@omm.com
Luann L. Simmons (State Bar No. 203526)
lsimmons@omm.com
Geoffrey H. Yost (State Bar No. 159687)
gyost@omm.com
Alexander B. Parker (State Bar No. 264705)
aparker@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Melody Drummond Hansen
(State Bar No. 278786)
mdrummondhansen@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94111
Telephone: (650) 473-2600
Facsimile: (650) 473-2601

*Attorneys for [24]7.ai, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| LIVEPERSON, INC.,<br><br>                    Plaintiff,<br><br>         v.<br><br>[24]7.ai, INC.,<br><br>                    Defendant. | Case No. 4:17-CV-01268-JST<br><br>**AMENDED JOINT PRETRIAL STATEMENT**<br><br>**Date:  May 17, 2021**<br>**Time: 9:30 a.m.**<br>**Courtroom: 6**<br><br>**Trial: May 24, 2021** |

## TABLE OF CONTENTS

**Page(s)**

I. SUBSTANCE OF THE ACTION ........................................................................................... 1

II. RELIEF REQUESTED .................................................................................................... 1

III. UNDISPUTED FACTS .................................................................................................. 2

IV. DISPUTED FACTUAL ISSUES ...................................................................................... 3

V. AGREED STATEMENT ................................................................................................. 4

VI. STIPULATIONS ........................................................................................................... 4

VII. WITNESSES TO BE CALLED ....................................................................................... 9

VIII. EXHIBITS, SCHEDULES, AND SUMMARIES ............................................................... 15

IX. DISPUTED LEGAL ISSUES ......................................................................................... 15

X. PENDING MOTIONS OR MATTERS ............................................................................. 16

XI. USE OF DISCOVERY RESPONSES .............................................................................. 16

XII. ESTIMATE OF TRIAL TIME ....................................................................................... 17

XIII. SETTLEMENT DISCUSSIONS .................................................................................... 17

XIV. MISCELLANEOUS .................................................................................................... 18

## I.      SUBSTANCE OF THE ACTION

LivePerson, Inc. ("LivePerson" or "Plaintiff") alleges that [24]7.ai, Inc. ("[24]7" or "Defendant") misappropriated certain trade secrets related to LivePerson's online chat platform and engaged in unfair competition.  With respect to the trade secrets to be tried in the first trial commencing on May 24, 2021, LivePerson will address its allegation that [24]7 misappropriated certain LivePerson trade secrets relating to three specific customers (Optus, Capital One, and Sears).  The trade secrets to be tried in the May 2021 trial have been agreed to by the parties.

[24]7 denies that LivePerson's rules and data are trade secrets.  [24]7 asserts that [24]7 has developed its own technology and had permission and authorization to use any rules or data [24]7 may have used.  [24]7 denies that it has engaged in any unfair competition, and instead asserts that [24]7 competed fairly with LivePerson.

The operative pleadings are LivePerson's Second Amended Complaint (Dkt. 50) and [24]7's First Amended Answer to LivePerson's Second Amended Complaint (Dkt. 312).

## II.     RELIEF REQUESTED

LivePerson seeks the following relief concerning its suit for misappropriation of trade secrets and unfair competition against [24]7 for purposes of the first trial:

1.      Find [24]7 liable for trade secret misappropriation under New York law;

2.      Find [24]7 liable for unfair competition under New York common law;

3.      Award LivePerson its actual damages in an amount to be determined at trial.  Specifically, LivePerson seeks approximately $16.42 million for past and future lost profits or $14 million as a reasonable royalty, in addition to applicable prejudgment interest, through the date of the verdict, for LivePerson's claims in the first trial;[1]

4.      Award LivePerson punitive damages in an amount to be determined at trial;

5.      Enjoin [24]7 from unfairly competing with LivePerson;

6.      Enjoin [24]7 from misappropriating LivePerson's trade secrets;

7.      Enjoin [24]7 from continuing to use LivePerson's trade secrets;

---

[1]      The damages that LivePerson seeks in the first trial do not include those associated with customer Grainger, which will be addressed in the second trial.

8.      Award LivePerson pre- and post-judgment interest;

9.      Award LivePerson its costs in bringing this action and its attorneys' fees;

10.     Provide such other relief as the Court may deem just and proper.

[24]7 denies that LivePerson is entitled to any relief.  [24]7 objects to and opposes LivePerson seeking prejudgment interest.  [24]7 seeks its costs and attorneys' fees in defending this action and such other relief as the Court may deem just and proper.

## III.     UNDISPUTED FACTS

For purposes of the first trial only, the following is a non-exclusive list of undisputed facts:

1.      LivePerson is a publicly-traded Delaware corporation with offices at 475 Tenth Avenue, 5th Floor, New York, New York 10018 and 485 N Whisman Road, Suite 100, Mountain View, CA 94043.  LivePerson was founded in 1995.

2.      [24]7 is a California corporation with its headquarters at 2001 Logic Drive, Suite 200, San Jose, CA 95124.  [24]7 was founded in 2000.

3.      LivePerson offers live-interaction and customer engagement technology for websites including e-commerce websites.

4.      [24]7 also offers live-interaction and customer engagement technology for websites including e-commerce websites.

5.      [24]7 also provides human call-center and chat-center customer service agents to businesses.

6.      In 2006, the parties entered into a Co-Marketing and Referral Agreement, which provided for co-marketing of certain LivePerson technology and certain [24]7 services.

7.      In early 2007, the parties entered into a second contract, entitled Master Service Agreement (the "MSA"), which provided terms and conditions under which the parties could provide a combination of products and services to customers.

8.      On October 3, 2007, [24]7 terminated the Co-Marketing and Referral Agreement.

9.       [24]7 entered into a "Telemarketing Services Agreement" with Capital One with an effective date of November 14, 2003.

10.     LivePerson entered into an "Application Services Provider Agreement" with Capital One with an effective date of December 7, 2006.

11.     [24]7 entered into a "Master Outsourced Services Agreement" with Sears with an effective date of August 20, 2007.

12.     LivePerson entered into a "Master Services Agreement" with Sears with an effective date of September 18, 2009.

13.     [24]7 entered into a "Call Centre Services Agreement" with Optus with an effective date of November 16, 2006.

14.     Optus entered into a Master Services Agreement, with a commencement date of September 7, 2010, and later executed a Statement of Work with a company called Engage Pty Limited, LivePerson's reseller in Australia, with a date of July 29, 2011.  LivePerson acquired Engage in 2012.

## IV.     DISPUTED FACTUAL ISSUES

For purposes of the first trial only, the following is a non-exclusive list of issues of fact that are contested and remain to be litigated at trial:

1.     Whether the 15 alleged trade secrets are trade secrets.

2.     Whether the 15 alleged trade secrets are owned by LivePerson.

3.     Whether [24]7 misappropriated the alleged trade secrets with respect to Capital One, specifically those disclosed in Exhibits PX[2] 1 (Bates 247_SDNY559_001841516), PX 2 (Bates 247_SDNY559_001841673) and the XML data generated by LivePerson's smart chat platform analytics and reporting features available to chat agent managers and administrators and contained in downloadable reports for Capital One from December 7, 2006 to approximately October 31, 2014.

4.     Whether [24]7 misappropriated the alleged trade secrets with respect to Optus, specifically those disclosed in Exhibits PX 3 (Bates 247_SDNY559_000955379), PX 4 (Bates 247_SDNY559_002249623), PX 5 (Bates 247_SDNY559_001844864), PX 6 (Bates 247_SDNY559_002249624), PX 7 (Bates 247_SDNY559_002782716), PX 8 (Bates 247_SDNY559_002787817), PX 10 (Bates 247_SDNY559_002891967), PX 11 (Bates

---

[2]     "PX" stands for "Plaintiff's Exhibit."

247_SDNY559_001050253) and the XML data generated by LivePerson's smart chat platform analytics and reporting features available to chat agent managers and administrators and contained in downloadable reports for Optus from September 7, 2010 to approximately November 30, 2012.

5. Whether [24]7 misappropriated the alleged trade secrets with respect to Sears, specifically those disclosed in Exhibit PX 9 (Bates 247_SDNY559_002804621), PX 12 (Bates 247_SDNY559_001751617) and the XML data generated by LivePerson's smart chat platform analytics and reporting features available to chat agent managers and administrators and contained in downloadable reports for Sears from September 18, 2009 to approximately December 31, 2014.

6. Whether [24]7 engaged in unfair competition.

7. The extent of actual damages (if any) flowing from [24]7's alleged unlawful conduct.

8. If [24]7 is found liable for misappropriation or unfair competition, whether [24]7's acts were gross and wanton.

9. The amount of punitive damages (if any) that should be awarded based on [24]7's alleged unlawful conduct.

## V.   AGREED STATEMENT

No claim or defense may be decided solely based upon the agreed statement of facts.

## VI.   STIPULATIONS

***Stipulated Facts.*** The parties stipulate to the facts set forth in Section III, Undisputed Facts, above so that they need not be separately proved at trial. The parties reserve all rights during trial to present the facts set forth in Section III for purposes of background and context, and all objections to such presentation are reserved as well.

***Use of Trial Exhibits.*** To facilitate the use of exhibits at trial, the parties stipulate to not object on authenticity or hearsay grounds to exhibits that have been produced by either party, or produced by a third party pursuant to subpoena, and appear on their face to be business records (e.g. internal emails, financials, PowerPoint presentations created by the producing party in the ordinary course of their business), unless the party has a good faith belief and admissible evidence disputing the exhibit's authenticity. For clarity, produced documents are documents that were served on the other party (via

document production, email, deposition exhibit, court filing, or discovery response).  The stipulation would not waive other objections to the admissibility of these exhibits, such as relevance or hearsay within hearsay objections to such business records.

The parties reserve the right to object to foundation with respect to use of any exhibit with a specific witness, regardless of whether a foundation objection was lodged on the exhibit list with respect to that exhibit.  The parties agree that they will not object based on foundation to an exhibit being brought into evidence through an expert who cited the exhibit in his or her expert report, absent good cause.

***Examination of Witnesses.*** The Parties agree in principle that to the extent possible each live witness will only testify once and further agree that on cross-examination of witnesses called live at trial, adverse testimony beyond the scope of direct examination but relevant to the cross-examining party's case may be elicited (*e.g.,* Defendant may elicit testimony relevant to its case-in-chief during cross-examination of Plaintiff's live witnesses called during Plaintiff's case-in-chief).

The parties agree that video deposition testimony may be played during a party's case-in-chief even if the other party will call or has called that witness live in its case-in-chief.

The parties have a disagreement regarding the timing of the identification of live adverse witnesses.

***LivePerson's Proposal:***

LivePerson proposes that the parties identify adverse witnesses that a party wishes to call live (as opposed to by deposition video) during its case-in-chief by 10 days before the first day of trial, or May 14, 2021.  As set forth by [24]7 below, the focus of this dispute is [24]7's proposal that LivePerson state whether it will call [24]7's CEO, PV Kannan, adversely by Monday, May 10, 2021.  Contrary to [24]7's assertions, this issue first arose today, Friday, May 7, when [24]7 first raised it in draft redline comments to this statement.  As such, [24]7's proposal would require LivePerson to finalize its decision on whether to call Mr. Kannan adversely in two days over the weekend.  LivePerson's proposal is therefore more reasonable, and [24]7 has not provided any reason why it will be prejudiced by the extra four days, particularly considering that Mr. Kannan will be attending trial as a "live will call" witness for [24]7

anyway, and he is resident of the Bay Area.  [24]7's follow-on assertions below about Efim Dimenstein and Jason Gioia—that LivePerson changed Mr. Dimenstein from "will call live" to "may call live," and Mr. Gioia from a potential live witness to solely a deposition witness—are misplaced.  Those changes *reduce* the potential number of live witnesses, and are intended to further streamline the proceedings.

With respect to [24]7's request that it have more time to identify adverse witnesses, that only came up shortly ago.  LivePerson will confer with [24]7 on that issue as well as the issue above regarding LivePerson's deadline, and will update the Court if any resolutions are reached prior to the Pretrial Conference.

### [24]7's Proposal:

[24]7 responds that [24]7 has raised the issue of the timing of identifying adverse witnesses since at least February 24, so that [24]7 could plan to arrange to make witnesses available, including arranging travel and lodging, as appropriate.  On meet and confers, LivePerson indicated that it intended to rely on deposition testimony—not to call [24]7's witnesses live—a position memorialized by email a month ago, on April 5.  Then, late Wednesday, May 5, LivePerson raised for the first time a proposal for the parties to identify adverse live witnesses on May 17 (a position it has now revised to May 14).  At this stage, LivePerson should not wait until 10 days before trial to indicate whether it intends to call [24]7's CEO, PV Kannan, adversely.  Also, LivePerson for the first time the day this statement was due changed the status of two LivePerson witnesses, changing Efim Dimenstein, from a "will call live" to a "may call live," and Jason Gioia from a "may call live or by deposition" to "may call by deposition."  While LivePerson may be streamlining its case, given that [24]7's case will proceed weeks after LivePerson's begins and that [24]7's case will be presented in response to that case, it is not reasonable to require [24]7 to identify witnesses that it may call adversely on the same deadline as LivePerson, before LivePerson identifies all witnesses it will call live and otherwise before LivePerson presents its case.

**_Schedule for Trial Disclosures._** The parties stipulate to the following schedule for exchange of witness and exhibit information during trial:

1.      **_Opening Statements:_** The parties will exchange lists of all trial exhibits and copies of all demonstratives to be shown to the jury during opening statements by 5:00 p.m. the night before opening

statements are given.  The parties will exchange objections to these trial exhibits and demonstratives by 7:00 p.m. the night before opening statements are given.  To the extent there are any unresolved objections, the parties will meet and confer at or before 8:00 p.m. the night before opening statements are given.  Demonstratives exchanged will not be used by an opposing party before being used by the disclosing party.  This paragraph does not apply to demonstratives that are created in the courtroom (e.g., drawings on whiteboards, lists written on easels, etc.).

2.    ***Witnesses/deposition designations****:* The parties will identify witnesses to be called live and by deposition, in the order of call, by 5:00 pm two nights before the intended testimony.  For example, if a witness will be called Monday, live or by designation, that witness must be disclosed by 5:00 pm Saturday.  The parties agree to accommodate the schedule of out-of-town or remote witnesses by taking witnesses out of the identified call order, if necessary.  For deposition testimony, the disclosure will also include what testimony is designated.  The parties will exchange counter-designations (and objections to the deposition testimony to the extent objections are not resolved) by 9:00 p.m. two nights before the intended testimony.  The party that seeks to play the deposition testimony provides the opposing party with a copy of the actual video file to be played by 5:00 p.m. the night before its intended use.  To the extent there are any disputes regarding the video or designations, the parties will meet and confer at or before 8:00 p.m. the night before its intended use.  The video file must include all designated and counter-designated testimony in chronological order, regardless of which party designated the testimony.  For any witness whose testimony was recorded by video, the designating parties must play the video file and not, for example, perform a live reading by counsel.  For clarity, and absent good cause, all designations and counter-designations must be from those previously disclosed as part of the pretrial exchange process.

3.    ***Exhibits:*** The parties will exchange lists of exhibits they intend to use with live and by-designation witnesses during direct examination—but not for cross-examination—by 5:00 p.m. the night before their intended use.  The disclosure will identify which witness each disclosed exhibit will be used with.  The parties will exchange any unresolved objections to those exhibits by 7:00 p.m. the night

before their intended use.  To the extent there are any unresolved objections, the parties will meet and confer at or before 8:00 p.m. the night before the intended use.

4.    ***Demonstratives:*** The parties will exchange copies of all demonstratives they plan to use at trial for direct examination—but not for cross-examination—by 5:00 p.m. the night before their intended use.  The parties will exchange objections to demonstratives by 7:00 p.m. the night before their intended use.  To the extent there are any unresolved objections, the parties will meet and confer at 8:00 p.m. the night before the intended use.  This paragraph does not apply to demonstratives that are created in the courtroom (e.g., drawings on whiteboards, lists written on easels, etc.).  Demonstratives exchanged will not be used by an opposing party before being used by the disclosing party.

5.    ***Closing Arguments:***

[24]7's position is that the parties will exchange closing demonstrative slides by 5:00 p.m. the night before closing arguments are given.  [24]7's position is that this disclosure requirement does not apply to slides containing only trial testimony (except for the agreement noted below regarding disclosure of a template slide), slides containing only admitted exhibits, demonstratives that have already been published to the jury, or demonstratives that are created in the courtroom.  [24]7's position is that annotations to previously-admitted exhibits and trial testimony do not have to be disclosed, so long as such annotations are limited to enlargement, highlighting, ballooning, or other non-verbal annotations.  [24]7 proposes that if a party intends to show slides containing only trial testimony, that party must include in its disclosure a template slide showing the format the party will use for trial testimony.  [24]7 proposes that the parties will exchange objections to opening demonstratives by 7:00 p.m. the night before closing arguments are given.  [24]7 proposes that to the extent there are any unresolved objections, the parties will meet and confer at or before 8:00 p.m. the night before closing arguments are given.

LivePerson's position is that closing demonstrative slides need not be exchanged.  [24]7 made its proposal for the first time the afternoon that this Statement was due, and [24]7's proposal includes so many exceptions that it is unclear what [24]7 intends for the parties to disclose.  Such an unduly complex exchange procedure is unnecessary.  Further, [24]7's timeline for the disclosures is too early.

Nevertheless, LivePerson is willing to meet and confer to discuss this issue to determine whether a reasonable compromise can be reached.

6. ***Resting of case-in-chief:***  Each party must notify the other by 12:00 p.m. the day before that party intends to close its case-in-chief.

7. ***Meet and Confer over Objections:*** To the extent not covered by specific timelines described above, the parties will promptly meet and confer to resolve objections.

***Other Stipulations.***  The parties further stipulate to the following:

1. Neither party will present evidence or allegations, or ask questions, relating to harassment or physical altercations.

2. Neither party will refer to any claims or defenses brought by either party other than those at issue in the first trial.

3. Neither party will refer to any alleged acts of either party that are not relevant to LivePerson's claims in the First Trade Secret Trial.

4. Neither party will refer to the fact that LivePerson has other trade secrets that it alleges [24]7 misappropriated but that are not at issue in the First Trade Secret Trial.

5. This line intentionally blank.

6. Neither party will refer to any settlement discussions between the parties.

7. Neither party will refer to discovery issues or disputes.

8. Neither party will offer expert opinions or bases for those opinions not disclosed in the expert's reports, in violation of Federal Rule of Civil Procedure 26.

9. Neither party will refer to [24]7 security vulnerabilities or hacking of [24]7 data.

10. Neither party will offer evidence or argument that [24]7 breached an agreement with LivePerson or a confidential relationship with LivePerson.

11. Neither party will offer opinion testimony from lay witnesses, in violation of Federal Rule of Civil Procedure 26.

12.    Neither party will refer to, or offer evidence or argument relating to the allegation that Capital One changed chat platforms (from LivePerson to [24]7) because one of its employees was offended by the speaker at the Aspire Conference.

13.    The parties agree as follows:

**13(a)**   LivePerson may present evidence and argument concerning [24]7's acts with respect to the 15 alleged trade secrets at issue in the first trial in support of its trade secrets claim and its unfair competition claim at the first trial.

**13(b)** LivePerson may also present evidence and argument concerning the following additional alleged acts of unfair competition at the first trial (to the extent they relate to Optus, Sears, or Capital One):  [24]7 put monitor tags on customer websites to 'find out which [of LivePerson's] rules are performing.'  *See*, for example, Kumar Dep. Tr. at 331:15-16.  [24]7 created and injected code into LivePerson's back-end systems to track LivePerson chat events and to data mine LivePerson data to help [24]7 understand how LivePerson's systems work.  The tracking code included, for example, lpchattracker, lptrackingutil, and pspcustomtrackingutil.  *See*, for example 247_SDNY559_002254736.  [24]7 passed variables to LivePerson, including, for example, pxAsId, pxBsId, pxViId, HSSearch, HSDropdown, Section, EnquiryType, ArticleNumber, ArticleName, and ArticleHelpful.  *See*, for example, 247_SDNY559_003016489; 247_SDNY559_000927408; 247_SDNY559_002782214.  [24]7 replicated LivePerson's button behavior and invite design.  *See*, for example, 247_SDNY559_000908315."  These facts were also explored by [24]7 during its deposition of LivePerson's witnesses.  *See*, for example, LivePerson's 2nd Suppl. Resp. to Rog 19 at Reza Dep. Tr. (Nov. 29, 2017) at 55:21-57:21; 77:10-77:22 ([24]7 used Optus's logins to access LivePerson's platform), 161:21-162:06 ([24]7 was recommending rule changes to try to gain control of LivePerson's platform), 183:25-184:21 and Reza Exhibit 2547 ([24]7 was accessing LivePerson's agent performance metrics for Optus),

**13(c)** LivePerson will not present evidence or argument in support of its unfair competition claim at the first trial concerning any alleged acts other than the ones identified in paragraphs 13(a) and 13(b) of this stipulation.

The parties agree to further meet and confer regarding possible additional stipulations that will streamline trial.

## VII.    WITNESSES TO BE CALLED

LivePerson reserves the right to submit, as appropriate, additions and/or revisions to its witness list as the pretrial and trial process evolves, including meeting and conferring with [24]7 on trial management issues.  LivePerson reserves the right to add witnesses to this list, if needed, at least for the authentication of documents.  LivePerson reserves the right to examine the witnesses on topics other than those primarily listed.  LivePerson is identifying these witnesses in their individual and, if applicable, their 30(b)(6) capacities.  LivePerson also reserves the right to call any witness on Defendant's witness list and any witness called by Defendant.

| LivePerson's Witnesses | Substance of Testimony |
| --- | --- |
| Rob LoCascio (live) | LivePerson's business, product and technology history, including importance of trade secrets to LivePerson's business and harm to LivePerson caused by [24]7's conduct; LivePerson's policies and practices relating to confidentiality and protection of its intellectual property; online customer engagement market; LivePerson's trade secrets at issue in the first trial; [24]7's interference with and misappropriation of same; LivePerson's customer relationships, and history between LivePerson and [24]7. |
| Barry Lamm (live) | LivePerson sales; LivePerson customer relationships and training; LivePerson products and technologies, including LivePerson's trade secrets at issue in the first trial; and history between LivePerson and [24]7; online customer engagement market. |
| Mariam Reza (live) | LivePerson sales and customer relationships, and [24]7's interference with same; LivePerson's trade secrets at issue in the first trial; [24]7's interference with and misappropriation of same; LivePerson's policies and practices relating to confidentiality and protection of its intellectual property; and history between LivePerson and [24]7. |
| Dr. Stephen B. Wicker (live) | LivePerson's technical expert witness, particularly in the realm of live interaction and customer-engagement technology, and other issues per Dr. Wicker's expert reports and deposition, including LivePerson's trade secrets at issue in the first trial; critique of Dr. Kelly's opinions, and opinions |

| LivePerson's Witnesses | Substance of Testimony |
|---|---|
| | of [24]7's witnesses that are inconsistent with Dr. Wicker's opinions. |
| Dr. Steven Kursh (live) | LivePerson's expert witness concerning industry standards, and other issues per Dr. Kursch's expert reports and deposition, including LivePerson's trade secrets at issue in the first trial; critique of Dr. Zatkovich's opinions, and opinions of [24]7's witnesses that are inconsistent with Dr. Kursch's opinions. |
| Dr. William Choi (live) | LivePerson's expert witness concerning damages suffered by LivePerson, and other issues per Dr. Choi's expert reports and depositions; critique of Ms. Stuckwisch's opinions, and opinions of [24]7's witnesses that are inconsistent with Dr. Choi's opinions. |
| Efim Dimenstein (may call live) | LivePerson products and technologies, including importance of trade secrets to LivePerson's business; LivePerson's policies and practices relating to confidentiality and protection of its intellectual property; LivePerson's trade secrets at issue in the first trial; [24]7's interference with and misappropriation of same; interactions between LivePerson and [24]7. |
| Jason Gioia (may call by deposition) | LivePerson financial documentation and accounting practices. |
| PV Kannan (may call live or by deposition) | The commercial history between LivePerson and [24]7; [24]7 misappropriation of LivePerson's intellectual property. |
| Michael Moritz (may call by deposition) | [24]7's product development and strategy. |
| David Makarechian (may call by deposition) | [24]7's knowledge of, and communications relating to, the negotiation, interpretation, and performance under the Co-Marketing Agreement and Master Service Agreement. |
| Nidhin Varghese (may call by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Dibyendu (DB) Banerjee (may call by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Robert Camacho (may call live or by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Vageesh Dwivedi (may call by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Frank Pasko (may call by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Madhu Ranganathan (may call by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Ramasubramanian Ponniah (may call by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Nitin Gupta (may call by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Ramesh Kumar (may call by deposition) | [24]7's marketing to LivePerson customers; [24]7's misappropriation of LivePerson intellectual property. |
| Austin Burgess (may call by deposition) | Capital One's RFP process; [24]7's misappropriation of LivePerson intellectual property; the commercial history between LivePerson and Capital One. |
| Andrew Chang (may call by deposition) | [24]7's views regarding industry standards, including ownership of intellectual property and misappropriation thereof; [24]7's misappropriation of LivePerson's intellectual property. |

| LivePerson's Witnesses | Substance of Testimony |
|---|---|
| Ravi Garikipati (may call by deposition) | [24]7's views regarding industry standards, including ownership of intellectual property and misappropriation thereof; [24]7's misappropriation of LivePerson's intellectual property. |
| Ian Harris (may call by deposition) | The commercial history between LivePerson and Optus, including agreements; Optus's knowledge of LivePerson's intellectual property. |
| Pradeep Kichannagari (may call by deposition) | The commercial history between LivePerson and Optus; the commercial history between [24]7 and Optus; [24]7's misappropriation of LivePerson's intellectual property; Optus's views regarding industry standards, including ownership of intellectual property; Optus's knowledge of LivePerson's intellectual property. |
| Chandrasekar Lakshmanarao (may call by deposition) | [24]7's marketing to LivePerson's customers; LivePerson's technology; [24]7's misappropriation of LivePerson's intellectual property. |
| Craig Le Patourel (may call by deposition) | The commercial history between LivePerson and Optus, including agreements; [24]7's misappropriation of LivePerson's intellectual property; Optus's business and use of chat. |
| Ranning Li (may call by deposition) | [24]7's marketing and sales resulting from its misappropriation of LivePerson's intellectual property. |
| Amy McDonnell (may call by deposition) | [24]7's marketing to LivePerson's customers, including pricing; [24]7's misappropriation of LivePerson's intellectual property; the commercial history between [24]7 and LivePerson's customers, including agreements. |
| Danielle Newton (may call by deposition) | [24]7's training regarding confidentiality policies; [24]7's marketing to LivePerson's customers, including pricing; [24]7's misappropriation of LivePerson's intellectual property; [24]7's views regarding industry standards, including ownership of intellectual property and misappropriation of thereof. |
| Kristina Pfuertner (may call by deposition) | [24]7's marketing and sales resulting from its misappropriation of LivePerson's intellectual property. |
| Jordan Telman (may call by deposition) | [24]7's marketing and sales resulting from its misappropriation of LivePerson's intellectual property. |
| Ravi Vijayaraghavan (may call by deposition) | [24]7's misappropriation of LivePerson's confidential information; [24]7's views regarding industry standards, including ownership of intellectual property and misappropriation thereof; the commercial history between LivePerson and [24]7; the historical development of [24]7's chat platform; [24]7's marketing to LivePerson's customers. |

Defendant [24]7 submits its witness list as of May 7, 2021.  [24]7 reserves the right to submit, as appropriate, additions and/or revisions to its witness list as the pretrial and trial process evolves, including meeting and conferring with LivePerson on trial management issues.  [24]7 reserves the right to add witnesses to this list, if needed, at least for the authentication of documents.  [24]7 reserves the right to examine the witnesses on topics other than those primarily listed.  [24]7 is identifying these

witnesses in their individual and, if applicable, their 30(b)(6) capacities.  [24]7 also reserves the right to call any witness on Plaintiff's witness list and any witness called by Plaintiff.

| [24]7's Witnesses | Substance of Testimony |
| --- | --- |
| PV Kannan (will call live) | [24]7's founding, business, direction, financial performance, competition, marketing, customers, product development, and technology; [24]7's relationship with LivePerson; [24]7's relationships with its customers |
| Dr. John Kelly (will call live) | [24]7's expert witness regarding technical issues, including examination and rebuttal regarding alleged use of the trade secrets by [24]7, critique of opinions from Dr. Kursh and Dr. Wicker, and other issues per Dr. Kelly's expert reports |
| Sue Stuckwisch (will call live) | [24]7's expert witness regarding alleged damages to LivePerson, critique of opinion from Dr. Choi, and other issues per Ms. Stuckwisch's expert reports |
| Ivan Zatkovich (will call live) | [24]7's expert witness regarding technical and industry issues, including examination and rebuttal regarding alleged acquisition and use of the trade secrets by [24]7, critique of opinions from Dr. Kursh and Dr. Wicker, and other issues per Mr. Zatkovich's expert reports |
| Robert Camacho (will call live) | [24]7's relationship with, competition for, and provision of services to Optus; access to and authorization for use of data and rules, including the ATSs; use of rules and data, including but not limited to any alleged ATSs; platform and chat agent pricing; Optus contracts with [24]7 |
| Nidhin Varghese (will call live) | [24]7's relationship with, competition for, and provision of services to Sears and Capital One; access to and authorization for use of data and rules, including the ATSs; use of rules and data, including but not limited to any alleged ATSs |
| Nitin Gupta (will call live) | [24]7's relationship with, competition for, and provision of services to Capital One; access to and authorization for use of data and rules, including the ATSs; use of rules and data, including but not limited to any alleged ATSs |
| Ran Almog (may call by deposition) | LivePerson and [24]7's work for, business with, and relations with Capital One and/or Optus, including Capital One's and/or Optus's reasons for switching from LivePerson to [24]7; competition for Capital One's and/or Optus's chat and/or platform business; access to and authorization for use of data and rules, including the ATSs |
| Austin Burgess (may call by deposition) | LivePerson and [24]7's work for, business with, and relations with Capital One, including Capital One's reasons for switching from LivePerson to [24]7; competition for Capital One's chat and/or platform business |
| Andrew Chang (may call live or by deposition) | [24]7's relationship with, competition for, and provision of services to Optus; access to and authorization for use of data and rules, including the ATSs; use of rules and data, including but not limited to any alleged ATSs |
| Richard Corriss (may call by deposition) | LivePerson's competition with [24]7, including with respect to Capital One |

| [24]7's Witnesses | Substance of Testimony |
|---|---|
| Dustin Dean (may call by deposition) | APAC sales; LivePerson business practices and customer relations; LivePerson's competition with [24]7, including with respect to Optus |
| Jennifer Delgado (may call by deposition) | LivePerson's competition with [24]7, including with respect to Sears; LivePerson's relationship with Sears |
| David Flammia (may call by deposition) | LivePerson's use of information from other chat platforms |
| Vageesh Dwivedi (may call live) | [24]7's products, services, and technology, including [24]7's customer engagement technology and products; the development of [24]7's products, services, and technology; use of rules and data, including but not limited to any alleged ATSs |
| Michael Garthright (may call by deposition) | Hilton's reasons for selecting [24]7 as chat platform vendor and its reasons for not selecting LivePerson as chat platform vendor |
| Ravi Garikipati (may call live or by deposition) | [24]7's products, services, and technology, including [24]7's customer engagement technology and products; the development and deployment of [24]7's products, services, and technology |
| Jason Gioia (may call by deposition) | LivePerson's financial performance, competition, marketing, and customers |
| Lynn Gibson (may call by deposition) | LivePerson security policies and protection of its trade secrets, including the ATSs |
| John Hallett (may call by deposition) | LivePerson's competition with [24]7, including with respect to Capital One; LivePerson's relationship with Capital One |
| Ian Harris (may call by deposition) | LivePerson and [24]7's work for, business with, and relations with Optus, including Optus's reasons for switching from LivePerson to [24]7 and Optus's authorizing [24]7 to use the Alleged Trade Secrets; competition for Optus's chat and/or platform business |
| Kathy Juve (may call live or by deposition) | [24]7's marketing and competition, including with LivePerson |
| Pradeep Kichannagari (may call by deposition) | LivePerson and [24]7's work for, business with, and relations with Optus, including Optus's reasons for switching from LivePerson to [24]7 and Optus's authorizing [24]7 to use the Alleged Trade Secrets; competition for Optus's chat and/or platform business |
| Ramesh Kumar (may call by deposition) | [24]7's chat/call center services, development, product offerings, competition, and operations; use of rules and data, including but not limited to any alleged ATSs |
| Craig LePatourel (may call by deposition) | LivePerson and [24]7's work for, business with, and relations with Optus, including Optus's reasons for switching from LivePerson to [24]7 and Optus's authorizing [24]7 to use the Alleged Trade Secrets; competition for Optus's chat and/or platform business |
| Ranning Li (may call by deposition) | CNU's reasons for selecting [24]7 as chat platform vendor and its reasons for not selecting LivePerson as chat platform vendor |
| Amy McDonnell (may call live or by deposition) | [24]7's relationship with, competition for, and provision of services to Sears; access to and authorization for use of data and rules, including the ATSs; use of rules and data, including but not limited to any alleged ATSs |

| [24]7's Witnesses | Substance of Testimony |
|---|---|
| Dan Murphy (may call by deposition) | LivePerson's financial performance, competition, marketing, and customers; LivePerson's litigation with [24]7 |
| Hope Norris (may call by deposition) | MetroPCS's reasons for selecting [24]7 as chat platform vendor and its reasons for not selecting LivePerson as chat platform vendor |
| Frank Pasko (may call live or by deposition) | [24]7's relationship with, competition for, and provision of services to Capital One; access to and authorization for use of data and rules, including the ATSs; use of rules and data, including but not limited to any alleged ATSs |
| Kevin Payne (may by deposition) | [24]7's marketing and competition with LivePerson |
| Ron Peled (may call by deposition) | LivePerson's protection of rules and data, including the ATSs |
| Kristina Pfuertner (may call by deposition) | Paypal's reasons for selecting [24]7 as chat platform vendor and its reasons for not selecting LivePerson as chat platform vendor |
| Raman Ponniah (may call live) | [24]7's products, services, and technology, including [24]7's customer engagement technology and products; the development of [24]7's products, services, and technology; [24]7's relationship with, competition for, and provision of services to Sears; access to and authorization for use of data and rules, including the ATSs; use of rules and data, including but not limited to any alleged ATSs; platform and chat agent pricing |
| Madhu Ranganathan (may call live or by deposition) | [24]7's sales, revenues, profits, costs, and/or financial performance |
| Phil Rogers (may call live or by deposition) | [24]7's relationship with, competition for, and provision of services to Sears; access to and authorization for use of data and rules, including the ATSs; use of rules and data, including but not limited to any alleged ATSs; presales and implementation of the [24]7 platform at Sears and elsewhere |
| Luba Shafir (may call by deposition) | Ownership of ATSs; LivePerson security practices and protection of its trade secrets, including the ATSs |
| Jordan Telman (may call by deposition) | DISH's reasons for selecting [24]7 as chat platform vendor and its reasons for not selecting LivePerson as chat platform vendor |
| Ravi Vijayaraghavan (may call live or by deposition) | [24]7's products, services, and technology, including [24]7's customer engagement technology and products; the development and deployment of [24]7's products, services, and technology; use and alleged use of data, rules, and ATSs |
| Alon Waks (may call by deposition) | LivePerson's competition and relationship with [24]7. |
| Kimberly Wick (may call by deposition) | Target's reasons for selecting [24]7 as chat platform vendor and its reasons for not selecting LivePerson as chat platform vendor |

## VIII. EXHIBITS, SCHEDULES, AND SUMMARIES

Attached as Exhibit A is LivePerson's amended exhibit list, which includes [24]7's objections.

Attached as Exhibit B is [24]7's amended exhibit list, which includes LivePerson's objections.

The parties are continuing to meet and confer to reduce the number of objections.  The parties have agreed that expert reports and deposition transcripts should not be included on the trial exhibit list,

with the understanding that they may be used in court for the purposes of cross-examination and impeachment.

## IX.     DISPUTED LEGAL ISSUES

For purposes of the first trial only, the following is a non-exclusive list of issues of law that are contested and remain to be litigated at the appropriate time:

1.     Whether the 15 alleged trade secrets are trade secrets;

2.     Whether the 15 alleged trade secrets are owned by LivePerson;

3.     Whether [24]7 misappropriated the alleged trade secrets with respect to Capital One, specifically those disclosed in Exhibits PX 1 (Bates 247_SDNY559_001841516), PX 2 (Bates 247_SDNY559_001841673) and the XML data generated by LivePerson's smart chat platform analytics and reporting features available to chat agent managers and administrators and contained in downloadable reports for Capital One from December 7, 2006 to approximately October 31, 2014;

4.     Whether [24]7 misappropriated the alleged trade secrets with respect to Optus, specifically those disclosed in Exhibits PX 3 (Bates 247_SDNY559_000955379), PX 4 (Bates 247_SDNY559_002249623), PX 5 (Bates 247_SDNY559_001844864), PX 6 (Bates 247_SDNY559_002249624), PX 7 (Bates 247_SDNY559_002782716), PX 8 (Bates 247_SDNY559_002787817), PX 10 (Bates 247_SDNY559_002891967), PX 11 (Bates 247_SDNY559_001050253) and the XML data generated by LivePerson's smart chat platform analytics and reporting features available to chat agent managers and administrators and contained in downloadable reports for Optus from September 7, 2010 to approximately November 30, 2012;

5.     Whether [24]7 misappropriated the alleged trade secrets with respect to Sears, specifically those disclosed in Exhibit PX 9 (Bates 247_SDNY559_002804621), PX 12 (Bates 247_SDNY559_001751617) and the XML data generated by LivePerson's smart chat platform analytics and reporting features available to chat agent managers and administrators and contained in downloadable reports for Sears September 18, 2009 to approximately December 31, 2014;

6.     Whether [24]7 engaged in unfair competition;

7.     Whether to enjoin [24]7 from unfairly competing with LivePerson;

8.      Whether to enjoin [24]7 from misappropriating LivePerson's trade secrets;

9.      Whether to enjoin [24]7 from continuing to use LivePerson's trade secrets;

10.     Whether to award LivePerson compensatory damages;

11.     Whether to award LivePerson punitive damages;

12.     Whether to award LivePerson pre- and post-judgment interest;

13.     Whether to award LivePerson its costs in bringing this action and its attorneys' fees;

14.     Whether to award [24]7 its costs and attorneys' fees in defending this action.

## X.      PENDING MOTIONS OR MATTERS

No motions or matters are pending.

## XI.     USE OF DISCOVERY RESPONSES

Attached as Exhibit C are LivePerson's amended initial deposition designations and [24]7's amended objections to the same.

Attached as Exhibit D are LivePerson's amended counter deposition designations and [24]7's amended objections to the same.

Attached as Exhibit E are [24]7's amended initial deposition designations and LivePerson's amended objections to the same.

Attached as Exhibit F are [24]7's amended counter deposition designations and LivePerson's amended objections to the same.

Attached as Exhibit G are [24]7's amended counter-counter deposition designations and LivePerson's objections to the same.

The parties will continue to meet and confer to resolve objections to designated testimony.

LivePerson may offer into evidence [24]7's responses to LivePerson Interrogatory No. 1 (Third Set of Interrogatories).  [24]7 objects on the following grounds: (1) relevance, (2) incompleteness, (3) that LivePerson did not identify this interrogatory response until shortly before the filing of the pretrial statement, and (4) lack of verification.

LivePerson may also offer into evidence [24]7's written responses to LivePerson's written questions regarding [24]7's use of LivePerson's trade secrets.  [24]7 objects on the following grounds: (1) relevance, (2) hearsay, and (3) lack of verification

[24]7 may offer LivePerson's responses to [24]7's Requests for Admission Nos. 3, 4, and 67 into evidence.  LivePerson objects to the admission of these responses on the basis of relevance.

## XII.  ESTIMATE OF TRIAL TIME

The Court has ordered that each side may have up to 19 hours to present its evidence.  ECF 659 at 1.  The parties stipulate that each side is allocated an additional 60 minutes for opening and 90 minutes for closing.

## XIII.  SETTLEMENT DISCUSSIONS

The parties participated in a private mediation with Honorable Dickran M. Tevrizian (Ret.) on March 20, 2017.  The mediation was unsuccessful.

The parties also participated in a private mediation with mediator Greg Lindstrom on March 6, 2019.  The mediation was unsuccessful.

The parties also participated in a settlement conference with the Hon. Sallie Kim on December 6, 2019.  The settlement conference was unsuccessful.

Despite the fact that no settlement has been reached, discussions remain open.

## XIV.  MISCELLANEOUS

*Objections:*  The parties continue to meet and confer to reduce the number of objections to exhibits and deposition designations.

### *Juror Notebooks*

The parties have agreed to include a list of the Alleged Trade Secrets ("ATSes") in the juror notebooks to assist the jurors in following the testimony at trial.  The parties agree on the description and identification (ATS A through ATS O) that will be used to describe the ATSes, and the witnesses are expected to refer to them by such letters.

### *Interpretation of Contracts*

*[24]7's Position:*

***Expert interpretation of contracts:*** The parties agreed in connection with [24]7's Motion in Limine No. 2 that no expert shall be allowed to offer interpretation of any contract provision, even ambiguous provisions.  While experts are permitted to offer disclosed opinions about ordinary practice in the relevant trade or business (ECF 659 at 1), the parties agree that no expert may offer an interpretation of a contract (including [24]7's contracts with its customers) based on the ordinary practice in a trade or business.  This does not preclude an expert from stating his or her opinion on the normal standards in the industry, unrelated to contract interpretation, provided that such opinions are provided in the expert's report.

***Lay interpretation of contracts:***  [24]7 seeks further guidance from the Court regarding lay witness testimony regarding the relevant contracts.  The Court has determined that two of LivePerson's contracts with its customers are ambiguous as to ownership of the Alleged Trade Secrets.  [24]7 expects that LivePerson may seek to elicit lay testimony about the interpretation of these contracts from LivePerson's lay witnesses.  [24]7 believes that this would be improper, because LivePerson objected to questions of its 30(b)(6) witnesses designated on interpretation of these contracts on the grounds that it called for legal conclusions, and the witnesses disclaimed any understanding of how the contract should be interpreted.

In addition to the contracts between LivePerson and its customers, there are also contracts between [24]7 and its customers on the parties' exhibit lists. The Court has not ruled on any issues regarding interpretation of these contracts. [24]7 believes that it should be permitted to elicit testimony from its lay witnesses regarding their understanding of these contracts, so long as the witnesses did not disclaim such an understanding in their deposition.

*LivePerson's Position:*

This afternoon was the first time that [24]7 raised the idea of including a portion of this Statement addressing the interpretation of contracts.  LivePerson has provided its initial response to [24]7's proposal below, and it is willing to meet and confer on this issue, but if the parties are unable to

resolve the issue before the Final Pretrial Conference, LivePerson will be prepared to address the issue at that time.

***Expert interpretation of contracts:***  The Court has already addressed this issue in its order related to Motion *in Limine* No. 2.  ECF. 659 at 1-2.  To the extent that [24]7 intends to restate the subject matter of the order differently than the Court's existing decision, [24]7's proposal is unnecessary.  To the extent that [24]7 intends to alter the Court's order or the parties' agreement related to this type of testimony, its proposal is improper.

***Lay interpretation of contracts:***  The Court has already ruled on a related issue in its order regarding Motion *in Limine* No. 2.  ECF. 659 at 1-2.  To the extent [24]7 seeks to raise a new objection to this type of testimony for the first time, its objection is improper as untimely.  Moreover, [24]7 has not provided the basis for its objection, as it has not cited to any specific testimony that it expects LivePerson will attempt to elicit, or the deposition testimony on which it bases this argument.

*The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial in this case, unless modified by the Court to prevent manifest injustice.*

DATED:  May 7, 2021

Respectfully submitted,

KIRKLAND & ELLIS LLP

By:   /s/ Michael W. De Vries
　　　Michael W. De Vries

*Attorneys for LivePerson, Inc.*

DATED:  May 7, 2021

O'MELVENY & MYERS LLP

By:   /s/ Darin Snyder
　　　Darin Snyder

*Attorneys for [24]7.ai, Inc.*

## ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from Darin W. Snyder.

By:   /s/ Michael W. De Vries
　　　Michael W. De Vries

*Attorneys for LivePerson, Inc.*