UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LIVEPERSON, INC.,
          Plaintiff,
     v.

[24]7.ai, INC.,
          Defendant.

Case No. 17-cv-01268-JST

**JURY INSTRUCTIONS**

### 1.4  DUTY OF JURY

Members of the Jury:  Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

### 1.6  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. Unless I provide an instruction otherwise, this is the burden of proof that will apply to the evidence at trial.

You should base your decision on all of the evidence, regardless of which party presented it.

### 1.7  BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving a claim or by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

### 1.9  WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.     the sworn testimony of any witness;

2.     the exhibits that are admitted into evidence;

3.     any facts to which the lawyers have agreed; and

4.     any facts that I have instructed you to accept as proved.

### 1.10  WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)  Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4)  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

## 1.11 EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## 1.12  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, one conclusion you might make from that fact is that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

### 1.13  RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

# 1.14  CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)  the opportunity and ability of the witness to see or hear or know the things testified to;

(2)  the witness's memory;

(3)  the witness's manner while testifying;

(4)  the witness's interest in the outcome of the case, if any;

(5)  the witness's bias or prejudice, if any;

(6)  whether other evidence contradicted the witness's testimony;

(7)  the reasonableness of the witness's testimony in light of all the evidence; and

(8)  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1

## 2.4  DEPOSITION IN LIEU OF LIVE TESTIMONY

2      A deposition is the sworn testimony of a witness taken before trial.  The witness is placed

3 under oath to tell the truth and lawyers for each party may ask questions.  The questions and

4 answers are recorded.  When a person is unavailable to testify at trial, the deposition of that

5 person may be used at the trial.

6      You heard testimony from depositions during trial.  Insofar as possible, you should

7 consider deposition testimony, presented to you in court in lieu of live testimony, in the same way

8 as if the witness had been present to testify.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 2.9  IMPEACHMENT EVIDENCE—WITNESS

2        The evidence that a witness lied under oath on a prior occasion may be considered, along

3   with all other evidence, in deciding whether or not to believe the witness and how much weight to

4   give to the testimony of the witness and for no other purpose.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.13  EXPERT OPINION

You have heard testimony from certain individuals who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### 2.14  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1

**2.16  EVIDENCE IN ELECTRONIC FORMAT**

2      Those exhibits received in evidence that are capable of being displayed electronically will

3 be provided to you in that form, and you will be able to view them in the jury room.  A computer,

4 projector, printer and accessory equipment will be available to you in the jury room.

5      A court technician will show you how to operate the computer and other equipment; how

6 to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be

7 provided with a paper list of all exhibits received in evidence.  You may request a paper copy of

8 any exhibit received in evidence by sending a note through the courtroom deputy.  If you need

9 additional equipment or supplies or if you have questions about how to operate the computer or

10 other equipment, you may send a note to the courtroom deputy, signed by your presiding juror or

11 by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting

12 to view.

13      If a technical problem or question requires hands-on maintenance or instruction, a court

14 technician may enter the jury room with courtroom deputy present for the sole purpose of

15 assuring that the only matter that is discussed is the technical problem.  When the court technician

16 or any nonjuror is in the jury room, the jury shall not deliberate.  No juror may say anything to the

17 court technician or any nonjuror other than to describe the technical problem or to seek

18 information about operation of the equipment.  Do not discuss any exhibit or any aspect of the

19 case.

20      The sole purpose of providing the computer in the jury room is to enable jurors to view

21 the exhibits received in evidence in this case.  You may not use the computer for any other

22 purpose.  At my direction, technicians have taken steps to ensure that the computer does not

23 permit access to the Internet or to any "outside" website, database, directory, game, or other

24 material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover

25 that the computer provides or allows access to such materials, you must inform the court

26 immediately and refrain from viewing such materials.  Do not remove the computer or any

27 electronic data from the jury room, and do not copy any such data.

28

**SPECIAL INSTR. 1: MISAPPROPRIATION OF TRADE SECRETS**

LivePerson's first cause of action against [24]7 is a claim for misappropriation of certain trade secrets.  You are to determine whether any trade secret has been misappropriated by [24]7.  LivePerson claims that its rules and data associated with its online chat technology for customers Optus, Sears, and Capital One are its trade secrets, and that [24]7 misappropriated them.  Those trade secrets have been presented to you during the trial and are listed on the verdict form you will receive in the jury room.

To prevail on a claim for misappropriation of trade secret, LivePerson must prove by a preponderance of the evidence that: (1) LivePerson possessed a trade secret; and (2) [24]7 used or is using that trade secret as a result of discovery by improper means and (3) that LivePerson was damaged as a proximate result of [24]7's trade secret misappropriation.

A trade secret is any formula, pattern, device or compilation of information that is used in one's business, and which gives him or her an opportunity to obtain an advantage over competitors who do not know or use it.  A trade secret is a process or device for continuous use in the operation of the business.  A combination of characteristics or components may be a trade secret even where each element is in the public domain, if the combination of publicly available characteristics and components is unique and not publicly known.  A trade secret is sufficiently unique where the combination is neither obvious nor easily duplicated. To prove that [24]7 "used" a combination trade secret where the components of the combination are publicly known, LivePerson must demonstrate that [24]7 used the combination, and not merely some elements. There is no requirement, however, that [24]7 use the trade secret in exactly the form in which it received it, and differences in detail do not preclude liability if substantially the process used is derived from LivePerson's trade secret.

The term "secret" has two related connotations: first, substantial exclusivity of knowledge of the formula, process, device or compilation of information; absolute secrecy is not required; and second, employment of precautionary measures to preserve such exclusive knowledge by limiting legitimate access by others.

In determining whether LivePerson has proved that it possessed a trade secret, identifiable with reasonable particularity, you may consider the following factors:

(1) the extent to which the information is known outside LivePerson;

(2) the extent to which it is known by employees and others involved with LivePerson;

(3) the extent of measures taken by LivePerson to guard the secrecy of the information;

(4) the value of the information to LivePerson and its competitors;

(5) the amount of effort or money expended by LivePerson in developing the information; and

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

In addition, LivePerson must prove that it owns the trade secrets.  In this case, the parties dispute whether certain alleged trade secrets are LivePerson's.

If you find that LivePerson has proved it possessed a trade secret, LivePerson must also prove that [24]7 misappropriated that trade secret.  In this case, LivePerson contends that [24]7 misappropriated the trade secrets by obtaining or using the trade secrets as a result of discovery by improper means.

Discovery by improper means includes means which fall below the generally accepted standards of commercial morality and reasonable conduct.  An example of such means is the making of a fraudulent misrepresentation to induce disclosure of the trade secret.  Discovery by improper means can be found where  one knowingly accepts information from a third party and was on notice that the disclosure was a breach of a duty of confidentiality owed by that third party to the trade secret owner.

To be clear, breach of an agreement alone is not sufficient to find that [24]7 engaged in discovery by improper means.  In addition, [24]7 may not be found to have misappropriated any of LivePerson's alleged trade secrets based on (1) a breach by [24]7 of an agreement that [24]7 itself had with LivePerson  or (2) a breach of any confidential relationship [24]7 itself has or had with LivePerson.

17

1

**SPECIAL INSTR. 2: UNFAIR COMPETITION**

2      LivePerson's second cause of action against [24]7 is a claim for unfair competition.  A

3   claim for unfair competition requires allegations of unfairness and an unjustifiable attempt to

4   profit from another's expenditure of time, labor, and talent.  Bad faith is an essential element of

5   an unfair competition claim.

6      To prevail on this claim, LivePerson must first prove that [24]7 misappropriated the

7   results of LivePerson's expenditure of time, labor, and talent, without LivePerson's permission,

8   and in an attempt to profit from LivePerson's work, by competing directly with LivePerson or

9   otherwise.  LivePerson alleges that each of the below actions constitute unfair competition (to the

10   extent they relate to Optus, Sears, or Capital One), specifically:

11          1.      [24]7's acts with respect to the 15 alleged trade secrets;

12          2.      [24]7 put monitor tags on customer websites to find out how LivePerson's
                    platform was performing;
13
14          3.      [24]7 created and injected code into LivePerson's back-end systems to track
                    LivePerson chat events and to data mine LivePerson data to help [24]7 understand
                    how LivePerson's systems work;
15
16          4.      [24]7 replicated LivePerson's chat button behavior and invite design.

17      Second, LivePerson must prove that [24]7 acted in bad faith.  Bad faith requires more than

     mere negligence or recklessness.  Instead, LivePerson must establish that [24]7 acted out of a
18
     dishonest purpose.
19
20      Third, LivePerson must prove that the acts of unfair competition damaged LivePerson.

21

22

23

24

25

26

27

28

1

**SPECIAL INSTR. 3: DAMAGES INTRODUCTION**

2   I am going to instruct you on the issue of damages.  The fact that I am instructing you on

3 the subject of damages does not mean that LivePerson is or is not entitled to recover damages.  I

4 am expressing no opinion one way or the other.  These instructions are only to guide you if you

5 find that the plaintiffs are entitled to recover damages.  If you decide that LivePerson is not

6 entitled to prevail on any of its claims, you need not address damages at all.  However, if you find

7 that LivePerson does prevail on one or more of its claims, you must determine the amount of any

8 damages established by LivePerson, if any.

9   There are essentially two kinds of damages which can be awarded in a lawsuit:

10 compensatory damages and punitive damages.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SPECIAL INSTR. 3.5:  CAUSATION**

You may award compensatory damages only for injuries that LivePerson proves were proximately caused by [24]7's allegedly wrongful conduct.  An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury.

1

**SPECIAL INSTR. 4: COMPENSATORY DAMAGES**

2       Compensatory damages are intended to compensate a plaintiff for any injury proximately

3   caused by a defendant's conduct.  Compensatory damages seek to make a plaintiff whole—that

4   is, to compensate plaintiff for the damage suffered.

5           The damages that you award must be fair and reasonable, neither inadequate nor

6   excessive.  You should not award compensatory damages for speculative injuries, but only for

7   those injuries that LivePerson has actually suffered or which it is reasonably likely to suffer in the

8   near future.

9       In awarding compensatory damages, if you decide to award them, you must be guided by

10  dispassionate common sense.  Computing damages may be difficult, but you must not let that

11  difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require

12  a plaintiff to prove the amount of his or her damages with mathematical precision, but only with

13  such definiteness and accuracy as the circumstances permit.

14      In all instances, you are to use sound discretion in fixing an amount of damages, drawing

15  reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

16      I have one more cautionary instruction to keep in mind with respect to compensatory

17  damages.  If you find LivePerson has prevailed on more than one claim and has established a

18  certain dollar amount with respect to a particular injury, you may not award multiple

19  compensatory damages for the same injury.  That is, compensatory damages are only meant to

20  make a plaintiff whole again, not to allow a plaintiff to recover more than he or she has lost.  Of

21  course, if LivePerson proves that different injuries are attributable to separate claims, then you

22  must award individual compensatory damages for the separate injuries to compensate LivePerson

23  fully.

24

25

26

27

28

1

**SPECIAL INSTR. 5: LOST PROFITS**

2      You may consider, in awarding compensatory damages, LivePerson's past and future lost

3  profits caused by the alleged wrongful acts of [24]7.  Lost profit damages are intended to

4  compensate the plaintiff for any losses suffered from the unlawful activity.  Lost profit damages

5  must be designed, as nearly possible, to restore the plaintiff to the position it would have been in

6  but for the unlawful activity.  The damages amount need not be determined with mathematical

7  certainty but only reasonable certainty.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SPECIAL INSTR. 6: REASONABLE ROYALTY**

If you find that LivePerson is entitled to damages but that lost profits do not adequately compensate LivePerson, you may award a reasonable royalties instead of lost profits.  Generally speaking, a reasonable royalty is defined as the reasonable amount that someone wanting to use a trade secret or other protected intellectual property should expect to pay the owner, and the owner should expect to receive, for its use, calculated from the time of the misappropriation to the date of your verdict.  Said another way, a reasonable royalty aims to calculate what the parties would have agreed to as a fair licensing price if both parties were trying to reach an agreement at a time just before the alleged misappropriation in question occurred.

In this case, the reasonable royalty is the payment that would have resulted from a hypothetical negotiation between LivePerson and [24]7.  You should focus on what the expectations of the parties would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  You must also assume that both parties believed the information allegedly misappropriated was lawfully protected, and that it was used by [24]7.  In addition, you must assume that the parties were willing to enter into an agreement.

The measure of damages is the royalty that would have resulted from this hypothetical negotiation, and not simply what royalty either party would have preferred.  You should assume that LivePerson and [24]7 knew at that time such things as the level of sales and profits that [24]7 would make using the intellectual property, and the sales and profits that LivePerson would lose as a result of [24]7's use of LivePerson's intellectual property.

I will list for you a number of factors which you may consider.  This is not intended as an exclusive list of the factors which you may consider, although it will give you an idea of the kinds of things to consider in setting a reasonable royalty.  Among the factors which you may find relevant are the following:

1)        whether LivePerson, has established a royalty for the intellectual property, for example, by granting other licenses at that royalty;

2)        whether or not LivePerson and [24]7 are competitors;

3)   the effect of using the intellectual property in promoting sales of other products of [24]7, if any;

4)   the profitability of the product sold using the intellectual property, and whether or not it is commercially successful or popular;

5)   the advantages of using the intellectual property at issue over other similar publicly available products;

6)   the nature and extent of [24]7's intended use of the intellectual property and the value of that use to [24]7;

7)   the duration of the trade secret and the term of the license;

8)   the amount that LivePerson and [24]7 would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount that a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the intellectual property—would have been willing to pay as a royalty and yet be able to make a reasonable profit, and which amount would have been acceptable by a prudent licensor who was willing to grant a license;

9)   the portion of the profit that is attributable to the intellectual property, as compared to the portion of the profit due to other factors, such as publicly available elements or processes, or features or improvements developed by [24]7;

10)  whatever other unique factors in the particular case might have affected the parties' agreement, such as the ready availability of alternative processes; and

11)  the opinions of qualified experts as to what a reasonable royalty would be.

## SPECIAL INSTR. 7: REASONABLE ROYALTY CALCULATION

A reasonable royalty can be in the form of either a percentage of a royalty base such as, for example, sales or profits, or alternatively based upon a fixed price.  You may decide to adopt either of these approaches, provided that it corresponds to what you believe would have resulted from the hypothetical negotiation previously described.  You may consider opinion testimony received in the trial in determining which method of calculating a royalty is more appropriate.

**SPECIAL INSTR. 8: PUNITIVE DAMAGES**

LivePerson also seeks punitive damages with respect to its misappropriation of trade secrets and unfair competition claims.

If you should find that LivePerson is entitled to a verdict for compensatory damages for misappropriation of trade secrets or unfair competition, you may, but are not required to, award LivePerson punitive damages.

<u>Deciding Whether LivePerson Is Entitled to Punitive Damages</u>

Punitive damages may be awarded for conduct that represents a high degree of immorality.

The purpose of punitive damages is not to compensate a plaintiff but to punish a defendant and thereby discourage the defendant and other people or companies from acting in a similar way in the future.  The misconduct must be exceptional.

To be entitled to punitive damages, LivePerson must prove by clear and convincing evidence that [24]7 (1) willfully engaged in acts that (2) were either wanton and reckless or malicious.

An act is willfully done if done voluntarily and intentionally and with the specific intent to commit such act.

An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety or rights of others.

An act is malicious if it is done deliberately, with knowledge of a plaintiff's rights and with gross indifference to those rights.

<u>Determining the Amount of Punitive Damages</u>

If you determine that an award of punitive damages is appropriate, you must next decide the amount.  In arriving at your decision as to the amount of punitive damages, you should consider the nature and reprehensibility of what [24]7 did.  That would include:

- the character of the wrongdoing;

- whether the conduct demonstrated an indifference to, or a reckless disregard of, the health, safety or rights of others;

- whether the acts were done with an improper motive or vindictiveness;

- whether the act or acts constituted outrageous or oppressive intentional misconduct;

- how long the conduct went on;

- whether [24]7 was aware of what harm the conduct caused or was likely to cause;

- any concealment or covering up of the wrongdoing;

- how often [24]7 had committed similar acts of this type in the past; and

- the actual and potential harm created by [24]7's conduct, including the harm to individuals or entities other than LivePerson.

Although you may consider the harm to individuals or entity other than LivePerson in determining the extent to which the conduct of [24]7 was reprehensible, you may not add a specific amount to your punitive damages award to punish it for the harm caused to others.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by LivePerson, and to the compensatory damages you award to LivePerson.

The reprehensibility of [24]7's conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by LivePerson and the compensatory damages you have awarded LivePerson.  You may also consider the financial condition of [24]7 and the impact your punitive damages award will have on [24]7.

1

**SPECIAL INSTR. 9:  DAMAGES—MITIGATION**

2      LivePerson has a duty to use reasonable efforts to mitigate damages.  To mitigate means

3 to avoid or reduce damages.

4      [24]7 has the burden of proving by a preponderance of the evidence:

5     1. that LivePerson failed to use reasonable efforts to mitigate damages; and

6     2. the amount by which damages would have been mitigated.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 3.1  DUTY TO DELIBERATE

2   Before you begin your deliberations, elect one member of the jury as your presiding juror.
3   The presiding juror will preside over the deliberations and serve as the spokesperson for the jury
4   in court.

5   You shall diligently strive to reach agreement with all of the other jurors if you can do so.
6   Your verdict must be unanimous.

7   Each of you must decide the case for yourself, but you should do so only after you have
8   considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

9   It is important that you attempt to reach a unanimous verdict but, of course, only if each of
10  you can do so after having made your own conscientious decision.  Do not be unwilling to change
11  your opinion if the discussion persuades you that you should.  But do not come to a decision
12  simply because other jurors think it is right, or change an honest belief about the weight and
13  effect of the evidence simply to reach a verdict.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.2  CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it , although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

1

### 3.3  COMMUNICATION WITH COURT

2          If it becomes necessary during your deliberations to communicate with me, you may send

3    a note through the courtroom deputy, signed by any one or more of you.  No member of the jury

4    should ever attempt to communicate with me except by a signed writing.  I will not communicate

5    with any member of the jury on anything concerning the case except in writing or here in open

6    court.  If you send out a question, I will consult with the lawyers before answering it, which may

7    take some time.  You may continue your deliberations while waiting for the answer to any

8    question.  Remember that you are not to tell anyone—including the court—how the jury stands,

9    whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or

10   have been discharged.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3.5  RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the courtroom deputy that you are ready to return to the courtroom.

# PRELIMINARY INSTRUCTIONS

### 1.3  DUTY OF JURY

Members of the jury:  You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

# 1.5  CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This case is a lawsuit brought by LivePerson, Inc. against [24]7.ai, Inc.  Both companies provide technology and services to customers that help those customers better serve visitors to their websites by providing website visitors with the option of online "chat."  "Chat" allows visitors to communicate with a customer service representative in real-time through the website using text or messaging instead of, for example, speaking with a representative over the phone. The online chat software may provide a button that a customer can click if they would like to chat with a customer service representative, or it may automatically offer a visitor an opportunity to chat with a representative when they appear to need help or information.  Online chat software may also collect and analyze data on website activities to further develop or refine the chat technology.

In this case, LivePerson alleges that [24]7 misappropriated certain trade secrets related to its online chat technology.  Some of these alleged trade secrets are rules for determining when to invite website visitors to chat.  And some of these alleged trade secrets are data about website visits.  These rules and data are related to online chat services for the websites of customers Optus, Capital One, and Sears.  LivePerson alleges that [24]7's misappropriation of the rules and data enabled [24]7 to win these and other customers away from LivePerson. LivePerson also contends that [24]7 misappropriated the results of LivePerson's expenditure of time, labor and talent, and is therefore liable for unfair competition.

LivePerson has the burden of proving these claims.

[24]7 denies that the rules and data at issue are LivePerson's trade secrets.[24]7 denies that the rules and data were owned by LivePerson, and [24]7 contends that any use of such rules and data was at the request and with the permission of Optus, Capital One, and Sears.  [24]7 denies that it engaged in any unfair competition because it always acted at the request and with the permission of its customers.

1

## 1.55  JUROR NOTEBOOKS

2          To help you follow the evidence, the parties have prepared a juror notebook for each of

3    you.  The juror notebooks contain the names, titles, and photographs of the people that may be

4    called as witnesses during the trial.

5          The juror notebooks also identify the Alleged Trade Secrets that LivePerson alleges [24]7

6    misappropriated.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.15  CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it ,although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved – including the parties, the witnesses or the lawyers – until you have been excused as

jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

1

### 1.17  NO TRANSCRIPT AVAILABLE TO JURY

2    I urge you to pay close attention to the trial testimony as it is given.  During deliberations

3 you will not have a transcript of the trial testimony.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.18  TAKING NOTES**

If you wish, you may take notes to help you remember the evidence, including in the juror notebooks.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

### 1.20  BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

1

**1.21  OUTLINE OF TRIAL**

2     Trials proceed in the following way: First, each side may make an opening statement. An

3 opening statement is not evidence. It is simply an outline to help you understand what that party

4 expects the evidence will show. A party is not required to make an opening statement.

5     The plaintiff will then present evidence, and counsel for the defendant may cross-

6 examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-

7 examine.

8     After the evidence has been presented, I will instruct you on the law that applies to the

9 case and the attorneys will make closing arguments.

10     After that, you will go to the jury room to deliberate on your verdict.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28